Henry S. David (SBN 89297)
hdavid@davidfirm.com
Hayim M. Gamzo (SBN 307033)
hgamzo@davidfirm.com
THE DAVID FIRM®
617 W. 7th St., Suite 702
Los Angeles, CA  90017
Telephone:  (213) 550-4020

Andrew F. Kim (SBN 156533)
akim@afklaw.com
Law Office of Andrew F. Kim, Esq., P.C.
9018 Balboa Boulevard, Suite 552
Northridge, CA 91325
Telephone:  (818) 216-5288

Attorneys for Defendants
HOWARD L. ABSELET and ISRAEL ABSELET

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>SOLYMAN YASHOUAFAR and MASSOUD AARON YASHOUAFAR,<br><br>Debtors.<br><br>DAVID K. GOTTLIEB, as Chapter 11 Trustee for Massoud Aaron Yashouafar and Solyman Yashouafar,<br><br>Plaintiff,<br><br>vs.<br><br>ELKWOOD ASSOCIATES, LLC., et al.,<br><br>Defendants. | Dist. Crt. Case No. 2:17-cv-08963<br><br>Bankruptcy Case No. 1:16-bk-12255-GM Jointly Admin. with Case No. 1:16-bk-12408-GM<br><br>Chapter 11<br><br>Adversary Proceeding No. 1:17-ap-1040-GM<br><br>**NOTICE OF MOTION AND MOTION BY HOWARD L. ABSELET AND ISRAEL ABSELET TO WITHDRAW REFERENCE AS TO ADVERSARY PROCEEDING, AND TO ASSIGN ADVERSARY PROCEEDING TO THE HONORABLE JOHN F. WALTER; EX. A (ADVERSARY SECOND AMENDED COMPLAINT)**<br><br>Hearing:<br>Date:     TBD<br>Time:     TBD<br>Place:    TBD |

LAW OFFICES
THE DAVID FIRM®
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on a date, at a time, and at a location, all to be determined and further notice to be given upon assignment of this matter to a specific judge, in the above referenced Court, Defendants Howard L. Abselet ("Howard") and Israel Abselet ("Israel," and together with Howard, the "Abselets") will, and hereby do, move pursuant 28 U.S.C. § 157, Federal Rules of Bankruptcy Procedure, Rule 5011, Local Rules Governing Bankruptcy Appeals, Cases, and Proceedings, Rule 9 (5011), and Local Civil Rules 7.1-1 and 83-1.3, for an order withdrawing the reference under General Order 13-05 as to the above-captioned adversary proceeding (the "Quiet Title Adversary Proceeding") pending in the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division (the "Bankruptcy Court").  The Abselets further respectfully request that the Court assign this Quiet Title Adversary Proceeding to the Honorable John F. Walter ("Judge Walter"), before whom are pending related actions, including (A) (1) an action in which Howard's lien on the real property that is the subject of the Quiet Title Adversary Proceeding arose, and (2) fraudulent transfer actions arising from the same scheme that underlies the Quiet Title Adversary Proceeding, and (B) who most likely will preside over a quiet title action by the Abselets in this Court (the Abselets' "Quiet Title Action"), which involve the exact same pieces of real property and the same transactions and virtually the same parties as in the Quiet Title Adversary Proceeding by Plaintiff David Gottlieb, as Chapter 11 Trustee (the "Trustee").

The Abselets bring this Motion on the following bases:

(A)     In Case No. 2:11-cv-00815-JFW(JEMx) (the "Collection Action"), Judge Walter entered a judgment (the "Judgment") in favor of Howard

THE DAVID FIRM®

LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

against, among others, Debtors Solyman Yashouafar ("Solyman[1]") and his brother, Massoud Aaron Yashouafar ("Massoud," and together with Solyman, the "Debtors").

(B)  In connection with enforcement of the Judgment, on August 29, 2012, Howard recorded an abstract of judgment with the County Recorder for the County of Los Angeles, thereby obtaining a lien on, among other things, the homes of the Debtors (the "Homes").

(C)  Senior to Howard's lien on the Homes were, among other things, liens in favor of Sina Abselet ("Sina"), the Abselets' father, to secure a loan in the original principal amount of $2 million, but reduced to $1.75 million as of the recordation of the deeds of trust (the "$1.75M Loan").

(D)  Effective September 1, 2016, Sina assigned the $1.75M Loan and all attendant rights, including collateral, to Israel.

(E)  The Homes secured other loans to, or guaranteed by, the Debtors.  One such loan was by Pacific Western Bank ("PWB").  Specifically, PWB lent the Debtors $6,551,575.00 (the "PWB Loan"), secured by liens on both Homes (the "PWB DOTs").

(F)  The Debtors defaulted on the PWB Loan no later than June 2010.

(G)  The Homes also were subject to several other liens, including deeds of trust in favor of Chase Manhattan Mortgage Corporation and Fereydoun Dayani, and abstract of judgment in favor of Soda Partners in the amounts of $25,400.00 and $8,400.00 and in favor of DMARC 2007-CD5 Garden Street LLC in the amount of $3,077,236.15.

(H)  By no later than 2014, the Debtors were insolvent and the subject of aggressive collection efforts by, among others, Howard.

---

[1]  The Abselets use first names to avoid confusion, not out of disrespect.

NOTICE OF MOTION AND MOTION BY ABSELETS TO WITHDRAW REFERENCE

THE DAVID FIRM®
LAW OFFICES
617 W. 7ᵗʰ St., Suite 702
Los Angeles, California 90017
(213) 550-4020

(I)   The Debtors therefore developed a scheme to put their assets in the names of their relatives and their relatives' companies.  These transfers included, but were not limited to:

(1)   the Debtors' stock in ECP Building, Inc. and their interests in Encino Corporate Plaza, L.P., which stock and interests the Debtors purported to transfer in January 2015 and again in July 2015;

(2)   the Debtors' stock in Alliance Property Investments, Inc., which they purported to transfer in March 2014;

(3)   the Debtors' indirect interests in a reserve account that Levene, Neale, Bender, Yoo & Brill L.L.P ("Levene Neale") held, which the Debtors and Levene Neale transferred in violation of Howard's rights in the reserve account, commencing no later than February 2012 and continuing through no earlier than November 2012; and

(4)   the conversion of JCBL Trust (a trust as to which Massoud's wife, Parinaz Yashouafar is the trustee and Massoud's and Parinaz's children are beneficiaries) from a revocable trust to an irrevocable trust, effective January 1, 2015;

This Court (Judge Walter) already is presiding over actions regarding the transfers described in subparagraphs 1, 2, and 3 above in Case Nos. 15-cv-7625, 15-cv-8570, and 16-cv-6263.  The Trustee has sued to avoid the transfers described in subparagraph 4 in an action pending in the United States Bankruptcy Court for the Central District of California, San Fernando Valley, Case No. 1:17-ap-01050-GM.

(J)   In addition, as part of and in furtherance of that scheme, and as described in greater detail in the Abselets' complaint in Case No. 2:17-cv-08894 before this Court, the Debtors conspired with Jack

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

- 3 -

Nourafshan, Parinaz's brother (and hence Massoud's brother-in-law) to use companies that the Nourafshan family owns to buy the PWB Loan and to foreclose on the Homes in a way that ensured that no one else would bid at the foreclosure sales, Massoud and his family could retain possession of his Home, and the Debtors would retain the value of the Homes free and clear of all liens junior to the PWB Loan.

(K)   On August 3, 2016, involuntary petitions for relief pursuant to Title 11 of the Bankruptcy Code were filed against the Debtors, thereby commencing their bankruptcy cases (the "Bankruptcy Cases"). The bankruptcy court hearing the Bankruptcy Cases (the "Bankruptcy Court") subsequently appointed the Trustee as the Chapter 11 trustee in the Bankruptcy Cases.

(L)   The Trustee commenced the Quiet Title Adversary Proceeding, attacking the transactions described in Paragraph J above, initially only suing the Nourafshan entities that had purported to foreclose on the Homes, but subsequently adding the lienholders on the Homes (including the Abselets).

(M)   Through a settlement that the Bankruptcy Court approved, the Abselets obtained relief from the automatic stay in the Bankruptcy Cases to attack the transactions described in Paragraph J above, and to thereby confirm, and to the extent necessary re-establish, their respective liens on the Homes.

(N)   The Abselets, as lienholders on the Homes, have commenced their own action in this Court (the Abselets' Quiet Title Action) attacking the transactions described in Paragraph J above, suing the Nourafshan entities that had purported to foreclose on the Homes and all lienholders on the Homes.

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

1   (O)   Hence, there are now two pending actions—the Trustee's Quiet Title

2         Adversary Proceeding and the Abselets' Quiet Title Action—

3         addressing the same transactions and with the same parties, one

4         pending in this Court and one pending the Bankruptcy Court.

5   The Abselets bring this Motion based on this Notice of Motion; the attached

6   Memorandum of Law; the concurrently filed Declaration of Henry S. David; the

7   pleadings and papers on file in this and related actions; and any additional evidence

8   or argument as may be presented at or before the hearing on this matter.

9

10  DATED:  December 13, 2017          THE DAVID FIRM®

11

12                                     By:   /s/  Henry S. David
                                             Henry S. David
13                                           Attorneys for Defendants
                                             HOWARD L. ABSELET and
14                                           ISRAEL ABSELET

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE DAVID FIRM®

LAW OFFICES
617 W. 7ᵗʰ St., Suite 702
Los Angeles, California 90017
(213) 550-4020

NOTICE OF MOTION AND MOTION BY ABSELETS TO WITHDRAW REFERENCE

THE DAVID FIRM®

LAW OFFICES
617 W. 7ᵗʰ St., Suite 702
Los Angeles, California 90017
(213) 550-4020

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In the captioned adversary proceeding (the "Quiet Title Adversary Proceeding"), currently pending in the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division (the "Bankruptcy Court"), Plaintiff David Gottlieb, as Chapter 11 trustee (the "Trustee"), seeks to quiet title in the homes (the "Homes") of Solyman Yashouafar ("Solyman[2]") and his brother, Massoud Aaron Yashouafar ("Massoud," and together with Solyman, the "Debtors"), or, alternatively, to set aside purported foreclosures on the Homes by companies that Debtors' relatives own.[3]  In that Quiet Title Adversary Proceeding, the Trustee has named lienholders on the Homes, including Howard L. Abselet ("Howard") and Israel Abselet ("Israel," and together with Howard, the "Abselets").[4]

This Court already is presiding over six cases arising from disputes between Howard and the Debtors.[5]  In one of those cases (the Abselets' Quiet Title Action), the Abselets, each of whom has a separate lien on the Homes, attack the very same foreclosures that the Trustee attacks in the Trustee's Quiet Title Adversary Proceeding.  The Abselets are not willing to consent to entry of a final judgment by the Bankruptcy Court in the Trustee's Quiet Title Adversary Proceeding, and, more

---

[2]     The Abselets use first names to avoid confusion, not out of disrespect.
[3]     Case No. 1:17-ap-1040-GM; Ex. A to this Motion.
[4]     Ex. A to this Motion.
[5]     See Case No. 2:11-cv-00815-JFW(JEMx) (the "Collection Action"); Case Nos. 2:15-cv-7625-JFW(JEMx), 2:15-cv-8570-JFW(JEMx), 2:16-cv-6263-JFW(JEMx) (collectively, the "Fraudulent Transfer Actions"); Case No. 2:17-cv-08894-RSWL(AFMx) (the Abselets' "Quiet Title Action"); and Case No. 2:16-cv-9519-JFW(JEMx) (Howard's "Nondischargeability Adversary Proceeding").  This Court also presided over a case between the Trustee and Howard, but that case has been settled and dismissed.  Case No. 2:17-cv-02473-JFW (the "Avoidance Adversary Proceeding").

---

NOTICE OF MOTION AND MOTION BY ABSELETS TO WITHDRAW REFERENCE

importantly, there are now two cases pending involving the same pieces of real property, and the same transactions, and involving virtually the same parties[6]—one pending in this Court and one pending in the Bankruptcy Court.  For party and judicial economy, those cases should be pending before the same judicial officer (and, indeed, consolidated).

The Abselets therefore respectfully request that this Court withdraw the reference of the Trustee's Quiet Title Adversary Proceeding and assign it to Judge Walter.

## II.   FACTUAL BACKGROUND

The history of Howard's claim against the Debtors is long and tortured, starting with his cousin (the Debtors' counsel and partner) and the Debtors defrauding him into lending the Debtors $6,000,000 of a medical malpractice settlement, with misrepresented collateral.  (Declaration of Henry S. David ["David Decl."], ¶ 3, Ex. 1.)  After much litigation, a settlement, and a breach of that settlement, Howard obtained an amended judgment on August 10, 2012 in the Collection Action against, among others, the Debtors (the "Judgment").  (Id., ¶ 4, Ex. 2.)  The amount currently owing under the Judgment exceeds $12 million, including post-judgment fees, costs, and interest, against which Howard has only received $5,060.  (Id., ¶ 5.)

As part of his attempts to collect on the Judgment in the Collection Action, on August 29, 2012, Howard recorded an abstract of judgment with the County Recorder for the County of Los Angeles ("Howard's Abstract of Judgment").  (David Decl., ¶ 8, Ex. 3.)  The lien under Howard's Abstract of Judgment reached the Homes.  (Id., ¶ 8.)  The Homes were already subject to several liens, including liens in favor of the Abselets' father, Sina Abselet ("Sina").  (Id., ¶ 9, Exs. 4, 5.)

---

[6]     The Trustee apparently used an out-of-date title report, and hence his list of lienholders differs a bit from the Abselets'.  Also, the Abselets sue a subsequent purchaser of the Homes.

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

Effective September 1, 2017, Sina assigned that loan and the related liens to Israel. (Id., ¶ 9, Ex. 6.)

The Abselets were not the Debtors' only creditors.  Indeed, their bankruptcy schedules show over $77 million in debts, and more than $162 million in proofs of claim have been filed in their Bankruptcy Cases.  (David Decl., ¶¶ 10-15, Exs. 8-13 [liens on the Homes]; ¶¶ 16, 17, Exs. 14, 15. [bankruptcy schedules]; ¶¶ 18, 19, Exs. 16, 17 [claims registers].)  With these debts in mind, and in particular, in response to Howard's vigorous enforcement of the Judgment, the Debtors engaged in numerous transactions in an effort make their assets unavailable to their creditors.  Among other things, the Debtors transferred:

- the Debtors' stock in ECP Building, Inc. ("ECP Building") and their interests in Encino Corporate Plaza, L.P. ("ECPLP"), which stock and interests the Debtors and others purported to transfer in January 2015 and again in July 2015;

- the Debtors' stock in Alliance Property Investments, Inc. ("APII"), which they purported to transfer in March 2014;

- the Debtors' indirect interests in a reserve account that Levene Neale Bender Yoo & Brill, LLP ("Levene Neale") held, which the Debtors and Levene Neale transferred in violation of Howard's rights, commencing no later than February 2012 and continuing through no earlier than November 2012; and

- the conversion of JCBL Trust (a trust as to which Massoud's wife, Parinaz Yashouafar is the trustee and Massoud's and Parinaz's children are beneficiaries) from a revocable trust to an irrevocable trust, effective January 1, 2015.[7]

---

[7]     The Trustee also has brought an action attacking the conversion of the JCBL Trust to an irrevocable one.  Case No. 1:17-ap-01050-GM, in the United States Bankruptcy Case for the Central District of California.

NOTICE OF MOTION AND MOTION BY ABSELETS TO WITHDRAW REFERENCE

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

THE DAVID FIRM®
LAW OFFICES
617 W. 7ᵗʰ St., Suite 702
Los Angeles, California 90017
(213) 550-4020

1   This Court already has found the transfers of the stock/interest in ECP

2   Building, ECPLP, and APII to be fraudulent.  (David Decl., ¶ 21, Ex. 18

3   [January 14, 2016 Transcript, at 32:20-33:1, 33:15-43:13].)  This Court is currently

4   presiding over an action about the transfers from the reserve account, having

5   summarily adjudicated that Levene Neale breached its contract in releasing moneys

6   from the reserve account.[8]  (Id., ¶ 24, Ex. 20.)  This Court also is presiding over two

7   other Fraudulent Transfer actions—Case Nos. 16-cv-7625 and 16-cv-8570.

8   As part of this scheme to put their assets in their relatives' hands, the Debtors

9   also engaged in a complicated series of transactions to transfer senior liens on their

10   Homes to their relatives' companies, and to have those companies foreclose under

11   those liens in such a manner as to chill bidding and to purport to extinguish the tens

12   of millions of junior liens, including the Abselets' liens.  The Abselets will not set

13   forth the details of that part of the scheme, which is alleged in great detail in the

14   Trustee's Second Amended Complaint and the Abselets' Complaint.  (David Decl.,

15   ¶¶ 26, 27, Exs. 21; Ex. A to this Motion (Trustee's Second Amended Complaint—

16   omitting exhibits); see also Exs. 21 [Abselet's answer] and 22 [Notice of Related

17   Cases].)

18   On April 25, 2017, the Trustee commenced the Quiet Title Adversary

19   Proceeding to quiet title in the Homes on the theory that the purported foreclosures

20   (the "Foreclosures") were void for various reasons (such as non-ownership of the

21   debt, failure to give notice, and giving defective notice), and, in the alternative, to

22   "avoid" (i.e., to set aside) the Foreclosures as, among other things, fraudulent

23   transfers.  (David Decl., ¶ 26; Ex. A to this Motion.)  The Nourafshan entities that

24   purported to foreclose and to buy at the defective Foreclosures filed a motion to

25   dismiss, which the Bankruptcy Court denied for the most part, but did require the

26   Trustee to amend to name the lienholders.  (Id., ¶ 30, Ex. 24.)  The Trustee then

27

28   [8]   Judge Mund has stated that Levene Neale's conduct did not pass the "smell"
     test.  (David Decl., ¶ 22, Ex. 19 [October 10, 2013 Transcript, at 44:2-3].)

filed his Second Amended Complaint, in which he named, among other lienholders, the Abselets.  (David Decl., ¶ 26; Ex. A to this Motion.)

On December 11, 2017, the Abselets filed their complaint in this Court, attacking the Foreclosures and naming virtually all the same parties whom the Trustee named.[9]  (David Decl., ¶ 27, Ex. 21.)

## III.   LEGAL ANALYSIS

**A.   The Court May Withdraw the Reference as to the Trustee's Quiet Title Adversary Proceeding**

Congress vested all original jurisdiction over bankruptcy cases in the United States District Court.  28 U.S.C. § 1334(a).  Congress further provided that the District Court could refer all cases in bankruptcy and any and all proceedings arising under, in, or related to cases in bankruptcy, to the Bankruptcy Court. 28 U.S.C. § 157(a).  The United States District Court for the Central District of California has referred all cases under the Bankruptcy Code and all proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code to the United States Bankruptcy Court for this District.  General Order 13-05.

However, various statutes and rules specifically provide that the District Court may withdraw the reference, either in whole or in part.  For example, 28 U.S.C. § 157(d) provides as follows:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.  The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires

THE DAVID FIRM®
LAW OFFICES
617 W. 7ᵗʰ St., Suite 702
Los Angeles, California 90017
(213) 550-4020

---

[9]   See fn. 6, supra.

consideration of both title 11 and other laws of the United States

regulating organizations or activities affecting interstate commerce.

The authority to withdraw the reference under the first sentence of Section 157(d) is often called "discretionary withdrawal" or "permissive withdrawal." The authority to withdraw the reference under the second sentence of Section 157(d) is often called "mandatory withdrawal." The Abselets proceed under the first sentence and seek discretionary withdrawal of the reference for the Trustee's Quiet Title Adversary Proceeding.

The statutory test for discretionary withdrawal of the reference is "for cause shown." Carlyle Fortran Trust v. nVidia Corp. (In re 3dfx Interactive Inc.), 2005 WL 1074407, at *3 (N.D. Cal. 2005); Carmel v. Galan (In re Larry's Apt., LLP), 210 B.R. 469, 472 (D. Az. 1997). Section 157(d) does not define "cause." Pursuant to case law applying Section 157(d), however, this Court has broad discretion in deciding whether to withdraw the reference. See In re Millennium Studios, Inc., 286 B.R. 300, 303 (D. Md. 2002). In determining whether to exercise that discretion, the Ninth Circuit has set forth the following factors for the Court to consider: (1) efficient use of judicial resources; (2) delay and costs to the parties; (3) uniformity of bankruptcy administration; (4) the prevention of forum shopping; and (5) other related factors. Heller Ehrman LLP v. Arnold & Porter, LLP (In re Heller Ehrman LLP), 464 B.R. 348, 357 (N.D. Cal. 2011), citing Security Farms v. Int'l Bros. of Teamsters etc., 124 F.3d 999, 1008 (9th Cir. 1997). The Abselets submit that applying those factors, this Court may, and respectfully should, withdraw the reference as to the Trustee's Quiet Title Adversary Proceeding.

NOTICE OF MOTION AND MOTION BY ABSELETS TO WITHDRAW REFERENCE

**B.     The Abselets Have Shown Cause to Withdraw the Reference as to the Trustee's Quiet Title Adversary Proceeding**

**1.     Efficient Use of Judicial Resources**

Withdrawing the reference as to the Trustee's Quiet Title Adversary Proceeding clearly would promote judicial economy and the efficient use of judicial resources.

The Abselets' claims in their Quiet Title Action and the Trustee's claims in his Quiet Title Adversary Proceeding overlap, and seek the very same relief:  To declare that that Foreclosures were ineffective and hence the Homes are part of the Debtors' bankruptcy estates.  The facts underlying Abselets' claims and the Trustee's claims are identical; indeed, in their answer to the Trustee's Second Amended Complaint, the Abselets have denied virtually none of the Trustee's material allegations and have raised no affirmative defenses.  (David Decl., ¶ 29, Ex. 23.)  The parties in the Trustee's Quiet Title Adversary Proceeding and the Abselets' Quiet Title Action are virtually identical.[10]  (<u>Id.</u>, ¶ 27, Ex. 21; Ex A. to this Motion.)

Further, this Court (specifically, Judge Walter) is extremely familiar with the Debtors' overall scheme to hide their assets, has made findings and rulings related to parts of said scheme, and is presiding over other actions that arose from that scheme.

Thus, judicial economy favors withdrawing the reference as to the Trustee's Quiet Title Adversary Proceeding.

---

[10]     <u>See</u> fn. 6, <u>supra</u>.

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

NOTICE OF MOTION AND MOTION BY ABSELETS TO WITHDRAW REFERENCE

**2. Delay and Costs to the Parties**

Withdrawal—and consolidation—will save the parties time and costs in that

- Discovery in the Trustee's Quiet Title Adversary Proceeding and the Abselets' Quiet Title Action (and, indeed, some of the other actions before Judge Walter) will overlap.

- Motion practice (such as summary judgment motions) will be duplicative in the two actions.

- If a trial is necessary, having two trials instead of one, with the same witnesses, the same exhibits, and the same issues, obviously would be unduly and unnecessarily expensive for the parties.

Moreover, withdrawing the reference as to the Trustee's Quiet Title Adversary Proceeding at this early stage will not result in delays or additional costs, and indeed, will have the opposite effect. The vast majority of parties have just been served, and most have not yet appeared. The Nourafshan entities filed a motion to dismiss to the Trustee's First Amended Complaint, but Judge Mund mostly denied that motion. (David Decl., ¶ 30, Ex. 24.) The Nourafshan entities have filed another motion to dismiss (mostly raising the same arguments that Judge Mund already rejected), which is not set for hearing until January 23, 2018. (Id., ¶ 31.) No discovery has been conducted, and no status conference has been held. (Id., ¶ 32.)

Hence, withdrawal of the reference will not delay matters, but will save substantial costs.

**3. Uniformity of Bankruptcy Administration**

Maintaining the Trustee's Quiet Title Adversary Proceeding in the Bankruptcy Court will not expedite the bankruptcy process or promote a uniform, efficient administration of the bankruptcy estates. The Trustee's recovery of the

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

Homes[11] is very important to the subject Bankruptcy Cases, and represents one of two major sources of recovery for creditors. (David Decl., ¶ 34.) But there is no reason to think that prosecution of the Trustee's Quiet Title Adversary Proceeding in the Bankruptcy Court will be more expeditious than in this Court. Indeed, any appeal from the Trustee's Quiet Title Adversary Proceeding in the Bankruptcy Court almost certainly would go to this Court (and, most likely, to Judge Walter) before going to the Ninth Circuit.

Thus, the withdrawal of the reference as to the Quiet Title Adversary Proceeding will not affect administration of the Bankruptcy Cases at all.

### 4.     Prevention of Forum Shopping

The Abselets move to withdraw the reference shortly after they filed their answer in the Trustee's Quiet Title Adversary Proceeding. (David Decl., ¶ 29, Ex. 23 [answer filed on December 6, 2017].) This Court has six cases pending on the issues related to the Trustee's Quiet Title Adversary Proceeding. Judge Mund's ruling on the Nourafshan entities' motion to dismiss was very favorable to the Trustee (and therefore indirectly to the Abselets as lienholders). Hence, the Abselets are not engaged in forum shopping and are not trying to "run from" the Bankruptcy Court. The Abselets move to withdraw the references solely to promote efficiency and to avoid further costs and delay incurring to the parties.

### IV.     CONCLUSION

For the foregoing reasons, the Abselets respectfully request that the Court grant the Motion, withdraw the reference as to the Trustee's Quiet Title Adversary Proceeding, and assign the Trustee's Quiet Title Action to Judge Walter.

---

[11]     Again, to be clear, the Abselets seek a declaration that the Trustee, not they, own the Homes; if successful, the Abselets merely have liens on the Homes.

1    DATED:  December 13, 2017          THE DAVID FIRM®

2

3                                      By:    /s/  *Henry S. David*
                                              Henry S. David
4                                      Attorneys for Defendants
                                       HOWARD L. ABSELET and
5                                      ISRAEL ABSELET

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

NOTICE OF MOTION AND MOTION BY ABSELETS TO WITHDRAW REFERENCE

EXHIBIT A

1  Jeremy V. Richards (CA Bar No. 102300)
   John W. Lucas (CA Bar No. 271038)
2  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 13th Floor
3  Los Angeles, CA  90067
   Tel/Fax: 310/277-6910 / 310/201-0760
4  E-mail:   jrichards@pszjlaw.com
              jlucas@pszjlaw.com
5
   Attorneys for David K. Gottlieb,
6  Chapter 11 Trustee of the Estates of Solyman
   Yashouafar and Massoud Aaron Yashouafar
7
8                  **UNITED STATES BANKRUPTCY COURT**
                   **CENTRAL DISTRICT OF CALIFORNIA**
9                   **SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>SOLYMAN YASHOUAFAR and<br>MASSOUD AARON YASHOUAFAR,[1]<br>               Debtors. | Case No.: 1:16-bk-12255-GM<br><br>Chapter 11<br>Jointly Administered |
| In re:<br>SOLYMAN YASHOUAFAR,<br>               Debtor. | Case No.: 1:16-bk-12255-GM<br>Chapter 11 |
| In re:<br>MASSOUD AARON YASHOUAFAR,<br>               Debtor. | Case No.: 1:16-bk-12408-GM<br>Chapter 11 |
| Affects:<br>☒  Both Debtors<br>☐  Solyman Yashouafar<br>☐  Massoud Aaron Yashouafar | |
| DAVID K. GOTTLIEB, as Chapter 11<br>Trustee for Massoud Aaron Yashouafar and<br>Solyman Yashouafar,<br>               Plaintiff,<br>    v.<br>ELKWOOD ASSOCIATES, LLC,<br>FIELDBROOK, INC.,<br>CITIVEST FINANCIAL SERVICES, INC.,<br>ISRAEL ABSELET,<br>HOWARD ABSELET,<br>CHASE MANHATTAN MORTGAGE<br>COMPANY,<br>QUALITY LOAN SERVICE<br>CORPORATION, AND<br>SODA PARTNERS, LLC,<br>               Defendants. | Adversary No.: 1:17-ap-01040<br><br>**SECOND AMENDED COMPLAINT TO (I)<br>QUIET TITLE OF THE REXFORD HOME, (II)<br>SET ASIDE FORECLOSURE SALE OF THE<br>REXFORD HOME, (III) AVOID ACTUAL AND<br>CONSTRUCTIVE FRAUDULENT TRANSFER<br>OF REXFORD HOME AND ACTUAL<br>FRAUDULENT TRANSFER OF CHALETTE<br>HOME, (IV) RECOVER THE PROPERTIES OR<br>VALUE THEREOF, AND (V) RELATED<br>RELIEF** |

---

[1] The Debtors, together with the last four digits of each Debtor's social security number are:  Solyman Yashouafar (5875) and Massoud Aaron Yashouafar (6590).  The Debtors maintain a business address of 16661 Ventura Blvd., Suite 600, Encino, CA 91436.

DOCS_SF:93679.10 32274/001

## **TABLE OF CONTENTS**

**Page**

I. The Parties ........................................................................................................ 1

II. Jurisdiction and Venue ..................................................................................... 3

III. General Allegations ......................................................................................... 4

      A.     The Rexford Home ........................................................................... 4

      B.     The Chalette Home ........................................................................... 4

      C.     Indebtedness Relating to Rexford Home .......................................... 5

      D.     Indebtedness Relating to Chalette Home .......................................... 6

      E.     Defaults Relating to the Rexford Home and Chalette Home............... 7

      F.     The Sale of the PWB Note and Deeds of Trust to Elkwood................ 7

      G.     The Foreclosure of the Chalette Home ............................................. 10

      H.     The Foreclosure of the Rexford Home ............................................. 13

      I.     Irregularities Relating to the Foreclosure of the Rexford Home ....... 14

      J.     Lease of Rexford Home to Massoud ................................................. 15

      First Claim for Relief (Quiet Title) (Pertains to:  Elkwood, Fieldbrook, Israel, Howard, Chase, Quality Loan, and Soda Partners).................................. 16

      Second Claim for Relief (Set Aside Foreclosure Sale of Rexford Home) (Pertains to:  Elkwood and Fieldbrook) ..................................................... 16

      Third Claim for Relief (Avoid Transfer/Foreclosure of Rexford Home as an Actual Fraudulent Transfer –11 U.S.C. § 548(a)(1)(A)) (Pertains to: Elkwood and Fieldbrook) ...................................................................... 18

      Fourth Claim for Relief (Avoid Transfer/Foreclosure of Rexford Home as an Actual Fraudulent Transfer – 11 U.S.C. § 544(b) and Section 3439.04(a)(1) of California Civil Code) (Pertains to:  Elkwood and Fieldbrook)...................................................................................... 18

      Fifth Claim for Relief (Avoid Transfer/Foreclosure of Rexford Home as a Constructive Fraudulent Transfer –  11 U.S.C. § 548(a)(1)(B)) (Pertains to:  Elkwood and Fieldbrook) ...................................................... 19

      Sixth Claim for Relief (Avoid Transfer/Foreclosure of Rexford Home as Constructive Fraudulent Transfer –  11 U.S.C. § 544(b) and Sections 3439.04(a)(2) and 3439.05 of California Civil Code) (Pertains to: Elkwood and Fieldbrook) ...................................................................... 20

      Seventh Claim for Relief (To Recover Rexford Home – 11 U.S.C. § 550) (Pertains to:  Elkwood and Fieldbrook) ................................................... 20

      Eighth Claim for Relief (Avoid Transfer/Foreclosure of Chalette Home as an Actual Fraudulent Transfer –  11 U.S.C. § 548(a)(1)(A)) (Pertains to: Fieldbrook)....................................................................................... 20

      Ninth Claim for Relief (Avoid Transfer/Foreclosure of Chalette Home as an Actual Fraudulent Transfer –  11 U.S.C. § 544(b) and Section 3439.04(a)(1) of California Civil Code) (Pertains to:  Fieldbrook).................... 21

      Tenth Claim for Relief (To Recover Value of Chalette Home – 11 U.S.C. § 550) (Pertains to:  Fieldbrook)........................................................... 22

i

**EXHIBITS**

EXHIBIT A – Tri-Center Reconveyance

EXHIBIT B – PWB Note

EXHIBIT C – Rexford DOT

EXHIBIT D – Chalette DOT

EXHIBIT E – Fieldbrook Assignment

EXHIBIT F – Memo dated February 17, 2015 from Guerrero

EXHIBIT G – Chalette Foreclosure Sale Deed

EXHIBIT H – Rexford Foreclosure Sale Deed

EXHIBIT I – Rexford Lease

David K. Gottlieb, the chapter 11 trustee (the "**Trustee**" or "**Plaintiff**") for the estates (individually, an "**Estate**" and, collectively, the "**Estates**") of Massoud Aaron Yashouafar ("**Massoud**") and Solyman Yashouafar ("**Solyman**," and together with Massoud, the "**Debtors**") hereby files this second amended complaint (the "**Second Amended Complaint**") against Elkwood Associates, LLC ("**Elkwood**"), Fieldbrook, Inc. ("**Fieldbrook**"), Citivest Financial Services, Inc. ("**Citivest**"), Chase Manhattan Mortgage Company ("**Chase**"), Quality Loan Service Corporation ("**Quality Loan**"), Israel Abselet ("**Israel**"), Howard Abselet ("**Howard**"), and Soda Partners, LLC ("**Soda Partners**") to: (a)(i) quiet title of Massoud's single family residence located at 910 Rexford Drive, Beverly Hills, CA (the "**Rexford Home**"), pursuant to sections 760.010 *et. seq.* of the California Code of Civil Procedure ("**CCP**"), (ii) set aside the foreclosure sale of the Rexford Home, (iii) avoid any transfer of the Rexford Home as an actual fraudulent transfer, pursuant to section 548(a)(1)(A) of title 11 of the United States Code (the "**Bankruptcy Code**"), (iv) avoid any transfer of the Rexford Home as an actual fraudulent transfer, pursuant to section 544(b) of the Bankruptcy Code and section 3439.04 of the California Civil Code ("**CC**"), (v) avoid any transfer of the Rexford Home as a constructively fraudulent transfer, pursuant to section 548(a)(1)(B) of the Bankruptcy Code, (vi) avoid any transfer of the Rexford Home as a constructively fraudulent transfer, pursuant to section 544(b) of the Bankruptcy Code and sections 3439.04(a)(2) and 3439.05 of the CC, and (vii) to recover the Massoud's Estate's interests in the Rexford Home, pursuant to section 550 of the Bankruptcy Code and (b)(i) avoid any transfer of Solyman's single family residence located at 580 Chalette Drive, Beverly Hills, CA (the "**Chalette Home**") as an actual fraudulent transfer, pursuant to section 548(a)(1)(A) of the Bankruptcy Code, (ii) avoid any transfer of the Chalette Home as an actual fraudulent transfer, pursuant to section 544(b) of the Bankruptcy Code and section 3439.04 of CC, and (iii) recover the Solyman's Estate's interests in the Chalette Home, pursuant to section 550 of the Bankruptcy Code, or the value thereof.

## I.

## **The Parties**

1.     On August 3, 2016 (the "**Petition Date**"), involuntary bankruptcy petitions were filed against the Debtors. The Debtors subsequently stipulated to the entry of *Orders for Relief* [Massoud

1

Docket No. 94] and [Solyman Docket No. 82] in their respective cases, which Orders for Relief were entered on or about September 12, 2016.  The Debtors further stipulated to the appointment of a chapter 11 trustee for each of their Estates and the Trustee was appointed as chapter 11 trustee for both Debtors by orders entered on or about September 20, 2016 [Massoud Docket No. 110] and [Solyman Docket No. 94].

2.      The names of the defendant parties in this Second Amended Complaint will appear in the titles of the "claims for relief" that implicate them. Thus, if a defendant's name does not appear in the title of a claim for relief, Plaintiff is not seeking relief with respect to such defendant in connection with that claim for relief.

3.      Plaintiff is the duly appointed and acting chapter 11 trustee for both of the Debtors and their respective Estates.

4.      Plaintiff is informed and believes and, based thereon alleges, that Elkwood is a limited liability company that was formed under the laws of California on or about December 17, 2014 and its address is One Capital Mall, Ste. 660, Sacramento, CA 95814.

5.      Plaintiff is informed and believes and, based thereon alleges, that Fieldbrook is a corporation that was organized under the laws of California on or about March 2, 2015 and its address is 16633 Ventura Blvd., 6th Floor, Encino, CA 91436.

6.      Plaintiff is informed and believes and, based thereon alleges, that Citivest is a corporate organized under the laws of Nevada and its address is 10008 Government Point Way #103, Las Vegas, NV 89183.

7.      Elkwood and Fieldbrook are controlled by Jack Nourafshan ("**Nourafshan**"), the brother of Massoud's spouse, Parinaz Yashouafar ("**Parinaz**") and brother in law of Massoud. Further, Elkwood and Fieldbrook are owned by Nourafshan and two of his brothers (collectively, the "**Nourafshan Family**").

8.      Plaintiff is informed and believes and, based thereon alleges, Chase is a corporation and its address is 780 Kansas Lane, Suite A, Monroe, LA 71203, Attn:  Legal Support Services.[2]

---

[2] For the avoidance of doubt, Chase is named in this Second Amended Complaint as a necessary party and only in connection with the First Claim for Relief (Quiet Title). By this Second Amended Complaint, Plaintiff is not challenging

2

DOCS_SF:93679.10 32274/001

9.      Plaintiff is informed and believes and, based thereon alleges, Quality Loan is a corporation and its address is 2141 5th Avenue, San Diego, CA 92101.[3]

10.     Plaintiff is informed and believes and, based thereon alleges, that Israel is an individual that resides at 114 Pine Street, Port Jefferson Station, NY 11776.

11.     Plaintiff is informed and believes and, based thereon alleges, that Howard is an individual that resides at 114 Pine Street, Port Jefferson Station, NY 11776.

12.     Plaintiff is informed and believes and, based thereon alleges, Soda Partners is a limited liability company that was organized under the laws of California and its address is 19101 Rose Ct., Monte Sereno, CA 95030.[4]

## II.

## Jurisdiction and Venue

13.     The Court has jurisdiction over this Adversary Proceeding under the Bankruptcy Code and pursuant to 28 U.S.C. §§ 157(a) and 1334.

14.     Venue in this district is proper pursuant to 28 U.S.C. § 1409(a).

15.     This Adversary Proceeding is commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure and is a core proceeding under 28 U.S.C. § 157(b)(2).

---

the lien or interest that Chase has against the Rexford Home. Any relief granted with respect to the First Claim for Relief in favor of Plaintiff will be subject to such lien and interest.

[3] For the avoidance of doubt, Quality Loan is named in this Second Amended Complaint as a necessary party and only in connection with the First Claim for Relief (Quiet Title). By this Second Amended Complaint, Plaintiff is not challenging the lien or interest against the Rexford Home that Quality Loan administers as trustee for the benefit of Chase. Any relief granted with respect to the First Claim for Relief in favor of Plaintiff will be subject to such lien and interest.

[4] For the avoidance of doubt, Israel, Howard, and Soda Partners are named in this Second Amended Complaint as necessary parties and only in connection with the First Claim for Relief (Quiet Title). By this Second Amended Complaint, Plaintiff is not validating or challenging any liens or interests against the Rexford Home that are junior to the PWB Note and Rexford DOT. Any relief granted with respect to the First Claim for Relief in favor of Plaintiff will not affect such lien or interest to the extent of their respective validity and priority and such liens will remain subject to their respective priority with any other valid lien or interest against the Rexford Home at the time of the purported foreclosure of the Rexford Home and subject to a reservation of Plaintiff's rights to challenge or object to such liens and interests.

3

## III.

## General Allegations

**A.     The Rexford Home**

16.     The Rexford Home is a 10,000 square foot single family residence that has six bedrooms, eight bathrooms, and is located in Beverly Hills. Prior to and after the Petition Date, the Rexford Home was used as Massoud's family residence. Massoud's spouse, Parinaz, and some or all of their four children lived in the Rexford Home after the purported foreclosure without paying any rent. Massoud has asserted that he and his family moved out of the Rexford Home in the summer of 2017.

17.     The Trustee estimates that the value of the Rexford Home is, and at all relevant times was approximately $12,000,000 to $15,000,000.

18.     The legal description of the Rexford Home is: Lot 5 and the Northerly 15 feet of Lot 4 of Tract No. 4201, in the city of Beverly Hills, County of Los Angeles, State of California, as per map recorded in book 46, page 63 of maps, in the office of the county recorder of said county.

19.     At the time of the subject transactions described herein, the Rexford Home was owned by Massoud, as trustee of the *Massoud and Parinaz Yashouafar 2003 Trust* (the "**Massoud Family Trust**").

20.     Upon information and belief, at the time of the subject transactions and as of the Petition Date, the Massoud Family Trust was revocable.

**B.     The Chalette Home**

21.     The Chalette Home is a 5,500 square foot single family residence that has five bedrooms, six bathrooms, and is located in Beverly Hills.

22.     In May 2015, the Chalette Home was sold by Fieldbrook for nearly $9,000,000.

23.     The legal description of the Chalette Home is:  Lot 34 in tract no. 24484, in the city of Beverly Hills, County of Los Angeles, State of California, as per map recorded in Book 657, Pages 99 and 100 of maps, in the office of the county recorder of said county.

24.     At the time of the subject transactions, the Chalette Home was owned by Solyman, as trustee of the *Solyman and Sheila Yashouafar 2004 Trust* (the "**Solyman Family Trust**").

4

25.     Upon information and belief, at the time of the subject transactions and as of the Petition date, the Solyman Family Trust was revocable.

**C.     Indebtedness Relating to Rexford Home**

26.     On or about January 16, 2004, Massoud and Parinaz borrowed approximately $2,516,300 (the "**Chase Loan**") from Chase. The repayment obligations of the Chase Loan were secured by a first deed of trust (the **"Chase/Rexford DOT"** against the Rexford Home. Quality Service currently serves as the trustee under the Chase/Rexford DOT.

27.     On or about February 5, 2004, Massoud and Parinaz borrowed approximately $2,000,000 (the "**Tri-Center Loan**") from Tri-Center Group, Inc. ("**Tri-Center**"). The repayment obligations of the Tri-Center Loan were secured by a second deed of trust against the Rexford Home (the "**Tri-Center DOT**").

28.     At the request of Elkwood, Tri-Center executed a reconveyance of the Tri-Center DOT (the "**Tri-Center Reconveyance**") on or about December 30, 2014, and the Tri-Center Reconveyance was delivered to Elkwood on, or shortly after December 30, 2014.  Nonetheless, Elkwood did not record the Tri-Center Reconveyance until July 14, 2015, almost five months after the Rexford Foreclosure Sale. A true and correct copy of the Tri-Center Reconveyance is annexed hereto as **Exhibit A**.

29.     On or about March 20, 2009, Massoud and Solyman executed a promissory note (the "**PWB Note**") for the benefit of Pacific Western Bank ("**PWB**") in the original principal amount of $6,551,575. A true and correct copy of the PWB Note is annexed hereto as **Exhibit B**. The PWB Note expressly provides:

> The word "Note" means the Note executed by Massoud Yashouafar and Solyman Yashouafar in the principal amount of $6,551,575.00 dated March 20, 2009, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

PWB Note, pg. 6.

30.     The repayment obligations of the PWB Note were secured by, among other things, a third deed of trust (the "**Rexford DOT**") against the Rexford Home for the benefit of PWB. A true

5

and correct copy of the Rexford DOT is annexed hereto as **Exhibit C**. The Rexford DOT has an instrument number of 20090425659. The Rexford DOT expressly provides:

> THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST.

Rexford DOT, pg. 1 (Capital font in the original). The Rexford DOT expressly provides:

> The word "Note" means the promissory note dated March 20, 2009, in the original principal amount of $6,551,575.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

Rexford DOT, pg. 10.

31.     In 2009, Massoud executed a promissory note favor of Sina Abselet in the approximate amount of $2,000,000 and the repayment obligations were secured by a deed of trust for the Rexford Home. Currently, Israel is owner of the promissory note and related deed of trust.

32.     In 2011, Soda Partners obtained judgment against Solyman and an abstract of judgment against the Rexford Home in the approximate amount of $25,400. The abstract of judgment was recorded against the Rexford Home.

33.     In 2012, Howard obtained a judgment against Massoud in the approximate amount of $6 million and an abstract of judgment was recorded against the Rexford Home.

**D.     Indebtedness Relating to Chalette Home**

34.     In addition to the Rexford DOT, the Solyman Family Trust secured the repayment obligations under the PWB Note by executing a deed of trust (the "**Chalette DOT**") against the Chalette Home for the benefit of PWB. A true and correct copy of the Chalette DOT is annexed hereto as **Exhibit D**. The Chalette DOT has an instrument number of 20090425658. The Chalette DOT expressly provides:

> THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY

6

AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED
DOCUMENTS, AND THIS DEED OF TRUST.

Chalette DOT, pg. 1 (Capital font in the original). The Chalette DOT expressly provides:

> The word "Note" means the promissory note dated March 20, 2009, in
> the original principal amount of $6,551,575.00 from Borrower to
> Lender, together with all renewals of, extensions of, modifications of,
> refinancings of, consolidations of, and substitutions for the promissory
> note or agreement.

Chalette DOT, pg. 10.

35.     The Chalette DOT was junior to a deed of trust (the **"Chase/Chalette DOT"**) in favor of Chase and securing repayment of a loan in the original principal amount of $1.475 million.

36.     In 2012, Howard obtained a judgment against Solyman in the approximate amount of $6 million and an abstract of judgment was recorded against the Chalette Home.

**E.     Defaults Relating to the Rexford Home and Chalette Home**

37.     On or about September 20, 2013, Chase declared a default under the Chase Loan, issued a notice of default, and commenced the foreclosure process relating to the Rexford Home. The Rexford Home was subsequently noticed for a foreclosure sale by Chase on or about February 12, 2014 and again on June 11, 2014. The foreclosure by Chase was continued numerous times as Massoud attempted to cure payment arrears and/or restructure the debt.

38.     On or about January 22, 2014, PWB declared a default under the PWB Note, issued a notice of default, and commenced the foreclosure process against the Rexford Home and Chalette Home pursuant to the Rexford DOT and Chalette DOT.

**F.     The Sale of the PWB Note and Deeds of Trust to Elkwood**

39.     Throughout the early part of 2014, Massoud worked with both Chase and PWB to postpone their pending foreclosure proceedings.

40.     By e-mail dated June 3, 2014, Massoud advised PWB that he had:

> . . . approached a few private investors to possibly pay-off PWB by
> taking over the existing note and deed of trust.  As I have come close
> to finalizing a deal, they have inquired about the release price for each
> home.  I appreciate your confirmation that PWB will honor the
> previously agreed ratios shown on the attached e-mail."

7

41.     Plaintiff is informed and believes and, based thereon alleges that one of the aforementioned "private investors" was Nourafshan and that Nourafshan was interested in splitting the PWB Note between the Chalette Home and the Rexford Home.

42.     On June 11, 2014, Massoud advised PWB that he "was just contacted by the potential private lender that they are finalizing the letter you requested;" on the following day, June 12, 2014, Massoud caused to be delivered to PWB an expression of interest in purchasing the PWB Note made by Kensington Associates, LLC ("**Kensington**").  Plaintiff is informed and believes and, based thereon alleges, that Kensington is controlled by Nourafshan and owned by the Nourafshan Family. In the Kensington letter, Kensington, though Thelma Guerrero ("**Guerrero**"), asked whether PWB ". . . is willing to bifurcate the Secured Note into two separate notes, so that one secured note will be secured by the Rexford Property (the Rexford Note), and one secured note will be secured by the Chalette Property (the Chalette Note)."

43.     Subsequently, Kensington submitted a letter of intent (the "**Kensington Letter of Intent**") to purchase the PWB Note for a total purchase price of approximately $5.9 million, approximately $3.7 million "for the portion of the secured note allocated to the Rexford Property and the Rexford Deed of Trust," and approximately $2.2 million "for the portion of the Secured Note allocated to the Chalette Property and the Chalette Deed of Trust."

44.     Thereafter, negotiations between PWB and Kensington for the sale of the PWB Note proceeded haltingly.  On July 22, 2014, Massoud advised PWB that:

> . . .[t]he delay in finalizing this matter has been due to seemingly inability to bifurcate the properties.  The Buyer already has its committee approval to purchase the portion of the Note securing the Rexford Property (approximately 63% of the loan).  It is trying to complete its due diligence to obtain the approval of the Chalette Property as well.  If the Bank is willing to bifurcate the properties, the Rexford portion can be done immediately.  Otherwise, I request a few more days to hopefully obtain the approval to proceed.

45.     By e-mail dated August 7, 2014, PWB (through Rene Garcia ("**Garcia**")) advised Guerrero that there was only one loan to be sold.  By e-mail dated August 8, 2014, Massoud advised PWB that he was "planning to meet [the potential purchaser] next week to entice them to finalize this transaction."  A week later, on August 15, 2014, Massoud advised PWB that:  "I did have a

8

meeting with the potential buyer of the Note this week and I ended up giving up more concessions in the hopes that a deal would be finalized between them and PWB."  On August 19, 2014, Massoud advised PWB that he was going to "arrange another meeting with the purchaser attempting to reach a resolution."

46.     Subsequently, on August 29, 2014, Kensington submitted a revised letter of intent (the "**Revised Kensington Letter of Intent**"), offering to purchase the PWB Note for $6.05 million. Again, negotiations between Kensington and PWB proceeded haltingly; advised that no agreement had yet been signed, on October 6, 2014, Massoud advised PWB that "I have already put a call to the potential note buyer to ensure that everything is going forward."

47.     Subsequently, PWB and Kensington entered into a Note Sale Agreement (the "**Note Sale Agreement**") for the sale of the PWB Note from PWB to Kensington for a purchase price of $6.05 million, subject to a due diligence contingency to expire on October 27, 2014, with a closing to occur no later than ten days thereafter.

48.     On or about October 27, 2014, Garcia reported to her superior that she had received a call "from the prospective buyer earlier requesting until end of year to finalize the purchase of the Yashouafar loan.  When I asked why they needed the time, they said that they are talking to Yashouafar and trying to figure out how he will be able to pay them the note amount."

49.     Subsequently, on or about November 4, 2014, PWB and Kensington entered into that certain Amendment No. 1 to Note Sale Agreement (the "**Note Sale Amendment**"), acknowledging satisfaction of the due diligence conditions to closing and extending the closing date to December 29, 2014.

50.     On December 23, 2014, Guerrero e-mailed Garcia stating that: "We are intending to complete the purchase of the loan as we have agreed.  However, due to the Holidays, we need until February 12, 2015 so we can settle the grievances and issues with the borrowers amicably."

51.     PWB declined the request and additional requests to delay or alter the transaction. The sale of the PWB Note subsequently closed on December 29, 2014, but with the PWB Note being sold to Elkwood, rather than Kensington.

9

52.     Plaintiff is informed and believes and, based thereon alleges, that prior to the purchase of the PWB Note by Elkwood, Massoud and Nourafshan (who controlled Kensington and Elkwood) had a secret agreement and understanding as to how the Rexford Home and the Chalette Home, or their value, would be diverted from the Debtors' creditors to the benefit of the Nourafshan Family and/or Massoud, and to the detriment of those creditors.  Plaintiff is informed and believes and, based thereon alleges, that part of this secret agreement and understanding would be that Massoud and his family would be permitted to live in the Rexford Home, rent free, for an indeterminate period of time but that the Chalette Home would be delivered vacant so that the Nourafshan Family could make a quick, and sizeable profit and return on their investment.

**G.     The Foreclosure of the Chalette Home**

53.     After the PWB Note was assigned to Elkwood, the trustee for the Chalette DOT was substituted by Elkwood on or about January 12, 2014. Citivest assumed the role of trustee under the Chalette DOT.

54.     On or about January 26, 2015, Citivest, as the trustee under the Chalette DOT, filed and served a Notice of Trustee's Sale (the "**Chalette Foreclosure Sale Notice**") for the benefit of Elkwood.  The Chalette Foreclosure Sale Notice provided, among other things, the following:

- The foreclosure sale of the Chalette Home was scheduled for February 20, 2015 at 9:30 a.m. (prevailing Pacific Time) at the southwest entrance of the United States Post Office located at 900 N. Alameda Street, Los Angeles, CA 90012.

- The unpaid balance of the obligation (*i.e.*, the PWB Note) that must be satisfied at the foreclosure sale was $6,569,508.05.

55.     The Chalette Foreclosure Sale Notice was recorded on or about January 27, 2015.

56.     On or about February 18, 2015, and as described in greater detail below, Elkwood executed a certain assignment (the "**Fieldbrook Assignment**") of the Chalette DOT to Fieldbrook, which also included the assignment of the PWB Note. Because the PWB Note was assigned, the Rexford DOT was also assigned by operation of law. A true and correct copy of the Fieldbrook Assignment is annexed hereto as **Exhibit E**.

10

57.     The Fieldbrook Assignment did three things as evidenced by the face of the Fieldbrook Assignment.

58.     First, the Fieldbrook Assignment granted, assigned, transferred, and conveyed the Chalette DOT from Elkwood to Fieldbrook by way of the following provision:

> For Value Received, the undersigned ELKWOOD ASSOCIATES, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY hereby **grants, assigns, transfers and conveys to FIELDBROOK, INC.**, A CALIFORNIA CORPORATION all of its right, title and beneficial interest in and to that certain Deed of Trust dated MARCH 20, 2009 executed by SOLYMAN YASHOUAFAR, AS TRUSTEE OF THE SOLYMAN AND SOHEILA YASHOUAFAR 2004 TRUST DATED MARCH 8, 2004 as Trustor, to PACIFIC WESTERN BANK, as Trustee, for the benefit of PACIFIC WESTERN BANK as beneficiary and recorded as Instrument No. 20090425658, on March 25, 2009, in Book _____, Page _____ of Official Records in the Office of the County Recorder of Los Angeles County, California, describing land in said county as . . .

Fieldbrook Assignment, pg. 1, para. 1 (Underscore and boldface type added but capital type face in original). See paragraph [34] of the Second Amended Complaint and Exhibit D hereto, which reflects that the Fieldbrook Assignment is referencing and assigning the Chalette DOT as it identifies the Chalette DOT by same recordation number.

59.     Second, the Fieldbrook Assignment expressly granted, assigned, transferred, and conveyed the PWB Note from Elkwood to Fieldbrook by way of the following provision:

> **Together with the Secured Promissory Note or Notes therein described or referred to**, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust, any liens, security interest, and remedies arising thereunder.

Fieldbrook Assignment, pg. 1, para. 4 (Underscore and boldface type added). As reflected in the definitions of the PWB Note and Chalette DOT, the "Secured Promissory Note" or "Notes" that is "therein described or referred to" is the PWB Note. On its face, the Fieldbrook Assignment assigned the PWB Note, as it was the debt instrument tied to the Chalette DOT.

60.     Third, because the PWB Note was assigned, the Rexford DOT was also automatically assigned by operation of law under Cal. Civ. Code § 2936 ("The assignment of a debt secured by mortgage carries with it the security").

11

61.     In addition, the Fieldbrook Assignment is titled as an "**ASSIGNMENT OF DEED OF TRUST AND PROMISSORY NOTE**." Fieldbrook Assignment, pg. 1 (Capital bold face type in original). Thus, the Fieldbrook Assignment expressly evidences the assignment and transfer of the Chalette DOT and PWB Note, and by virtue of the assignment of the PWB Note, the assignment of the Rexford DOT by operation of law.

62.     In connection with the Fieldbrook Assignment, by memo dated February 17, 2015, a true and correct copy of which is annexed hereto as **Exhibit F**, Guerrero, on behalf of Fieldbrook, advised Citivest that "we have assigned the Deed of Trust for the Chalette property to Fieldbrook, Inc. along with a dollar portion of the note secured by that Deed of Trust on the Property"; "the portion of the note that has been transferred to Fieldbrook, Inc. is $5,800,000.00.  As agent for Fieldbrook, Inc., you are hereby instructed to open beneficiary bid at the upcoming auction on February 20 at $5,800,000.00.  This will be their only bid"; and "[y]ou are hereby further instructed to open Elkwood's bid at your February 23 auction, for the Rexford Property, at the remaining balance of the note. . . ."  Nourafshan confirmed those instructions by e-mail to Ed Mazzarino ("**Mazzarino**"), a principal of Citivest, dated February 25, 2015.

63.     On February 20, 2015, Citivest conducted a foreclosure sale under the Chalette DOT (the "**Chalette Foreclosure Sale**").  Nourafshan submitted an opening bid of $5.8 million on behalf of Fieldbrook, a beneficiary under the Chalette DOT.  There being no other bids, the Chalette Home was sold to Fieldbrook at the Chalette Foreclosure Sale for a credit bid of $5.8 million.

64.     On or about February 25, 2015, Citivest executed a *Trustee's Deed Upon Sale* (the "**Chalette Foreclosure Sale Deed**") conveying the Chalette Home to Fieldbrook in exchange for its $5,800,000 credit bid arising under the PWB Note, Chalette DOT, and Fieldbrook Assignment (the "**Chalette Transfer**"). The Chalette Foreclosure Sale Deed was recorded on March 6, 2015. A true and correct copy of the Chalette Foreclosure Sale Deed is annexed hereto as **Exhibit G**.

65.     After completing the foreclosure of the Chalette Home, Fieldbrook incurred approximately $200,000 in expenses by making certain improvements to the Chalette Home for the purpose of marketing and selling the home.

66.     Approximately three months later, Fieldbrook sold the Chalette Home to a third party in exchange for $8,995,000. After commissions, the cash paid to Mr. Nourafshan was approximately $8,600,000.  Mr. Nourafshan has admitted that his profit from the Chalette Home foreclosure and sale was no less than $2.6 million, which is equal to an approximately 90% annualized rate of return on the funds allocated by Nourafshan/Fieldbrook to the Chalette Home.

**H.     The Foreclosure of the Rexford Home**

67.     After the PWB Note was assigned to Elkwood, the trustee for the Rexford DOT was substituted by Elkwood on or about January 12, 2014. Citivest assumed the role of trustee under the Rexford DOT.

68.     On or about January 26, 2015, Citivest, as the trustee under the Rexford DOT, filed and served a Notice of Trustee's Sale (the "**Rexford Foreclosure Sale Notice**") for the benefit of Elkwood.  The Rexford Foreclosure Sale Notice provided, among other things, the following:

69.     The foreclosure sale of the Rexford Home was scheduled for February 23, 2015 at 9:30 a.m. (prevailing Pacific Time) on the steps of the southwest entrance of the United States Post Office located at 222 N. Grand Ave, Los Angeles, CA 90012.

70.     The unpaid balance of the obligation (*i.e.*, the PWB Note) that must be satisfied at the foreclosure sale was $6,569,508.05.

71.     Notwithstanding the assignment of the PWB Note and Rexford DOT by way of the Fieldbrook Assignment, on February 23, 2015, Citivest conducted a foreclosure sale of the Rexford DOT (the "**Rexford Foreclosure Sale**").  Mazzarino, on behalf of Elkwood, opened the bidding with a purported credit bid of $782,508.05.  There being no other parties appearing at the Rexford Foreclosure Sale, the Rexford Home was sold to Elkwood in exchange for a purported credit bid of $782,508.05.

72.     On or about February 25, 2015, Citivest, on behalf of Elkwood, executed a *Trustee's Deed Upon Sale* (the "**Rexford Foreclosure Sale Deed**") relating to the foreclosure of the Rexford Home by Elkwood, which was recorded on March 6, 2015 (the "**Rexford Transfer**"). The Rexford Foreclosure Sale Deed reflects that Elkwood, not Fieldbrook, was the foreclosing party/beneficiary and that Elkwood took ownership of the Rexford Home by way of foreclosure in exchange for a

13

purported credit bid of $782,508.05 under the PWB Note. A true and correct copy of the Rexford Foreclosure Sale Deed is annexed hereto as **Exhibit H**.

**I.      Irregularities Relating to the Foreclosure of the Rexford Home**

73.      On or about February 20, 2015, Citivest, as the trustee under the Chalette DOT, conducted a foreclosure sale for the benefit of Fieldbrook and credit bid $5,800,000 outstanding under the PWB Note that was assigned to Fieldbrook.

74.      The Rexford Foreclosure Sale Notice reflected that the amount outstanding and owing to the beneficiary of the PWB Note was approximately 6,569,508.05 even though $5,800,000 of the PWB Note was credit bid against the Chalette Home. At the time of the foreclosure sale of the Rexford Home, only $782,508.05 was outstanding under the PWB Note.

75.      At the time of the foreclosure sale of the Rexford Home, Elkwood was not the holder of the PWB Note. When Elkwood transferred the Chalette DOT to Fieldbrook by way of the Fieldbrook Assignment it also transferred the entire PWB Note, which in turn automatically transferred the Rexford DOT by operation of law to Fieldbrook. As a result, Elkwood did not own the PWB Note or Rexford DOT, directly or indirectly, and, consequently, was not entitled to credit bid for the Rexford Property as Elkwood was not owed anything nor did it hold the power to foreclose under the Rexford DOT.

76.      At the time of the foreclosure sale of the Rexford Home, there was not a United States Post Office located at 222 N. Grand Ave, Los Angeles, CA 90012.  Rather, said address is the location of the Los Angeles County Kenneth Hahn Hall of Administration.

77.      As reflected in **Exhibit A** hereto, while the reconveyance of the Tri-Center Reconveyance was dated December 30, 2014, and delivered to Elkwood on or shortly after its execution, Elkwood waited until July 14, 2015 to record the reconveyance, which was five months after the purported foreclosure of the Rexford Home by Elkwood.

78.      As a result, at the time of the foreclosure of the Rexford Home, it would have appeared to a potential bidder that he/she would need to bid more than $10 million in cash to secure the property when, in fact:  (i) the Tri-Center DOT (securing the principal amount of $2 million) had already been paid in full and reconveyed; (ii) the outstanding principal amount of the PWB Note had

14

been reduced to $782,000 by virtue of the foreclosure on the Chalette Home; and (iii) Elkwood did not even own the PWB Note (having assigned it to Fieldbrook on February 18, 2015) and was therefore not entitled to credit bid at the foreclosure sale.

**J.      Lease of Rexford Home to Massoud**

79.      On or about March 7, 2015, Massoud and Elkwood executed a lease (the "**Rexford Lease**") for the Rexford Home with a term that expired in March 2017. The Rexford Lease provides that Massoud, Parinaz, and their four children would be permitted to live and occupy the Rexford Home. In exchange, Massoud was required to pay Elkwood $25,000 per month. A true and correct copy of the Rexford Lease is annexed hereto as **Exhibit I**.  Plaintiff is informed and believes and based thereon alleges that Massoud had no ability to pay the stipulated rent at the time the Rexford Lease was executed, or at any time thereafter, and is further informed and believes and, based on thereon alleges, that Elkwood and Nourafshan, as Elkwood's representatives, knew that Massoud had no such ability.

80.      Massoud has stated under oath on a number of occasions that he has no idea who owns Elkwood. Massoud has also testified that he has no idea who signed the Rexford Lease on behalf of Elkwood even though Mr. Nourafshan communicated with Massoud about executing the Rexford Lease and Mr. Nourafshan executed the Rexford Lease on behalf of Elkwood.  Further, Massoud has testified under oath that either his mother in law or brother in law (Nourafshan) was paying the rent under the Rexford Lease.

81.      In reality, neither Massoud nor anyone else has never made a single payment to Elkwood under the Rexford Lease. Nevertheless, Massoud and his family have remained undisturbed and enjoyed the unfettered use of the Rexford Home for over two years and they continue to live in the Rexford Home to this date rent free, as if the foreclosure sale had never occurred, even though the term of the lease has now expired.

DOCS_SF:93679.10 32274/001

**First Claim for Relief**

**(Quiet Title)**

**(Pertains to:  Elkwood, Fieldbrook, Israel, Howard, Chase, Quality Loan, and Soda Partners)**

82.     Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the above paragraphs as though fully set forth hereat.

83.     At the time it purported to credit bid $782,508.05 for the purchase and transfer of the Rexford Home on February 23, 2015, Elkwood had already assigned all of its right, title and interest in and to the PWB Note and, *inter alia*, the Rexford DOT to Fieldbrook by way of the Fieldbrook Assignment. As expressly reflected in the Fieldbrook Assignment, Elkwood granted, assigned, transferred, and conveyed the Chalette DOT together with the PWB Note, as the PWB Note is the very secured promissory note that is described and defined in the Challete DOT. Further, the Rexford DOT was also assigned from Elkwood to Fieldbrook by operation of law (Cal. Civ. Code § 2936) because the security for the PWB automatically follows the debt (i.e., the PWB Note) whether or not it is expressly assigned.

84.     Thus, at the time of the Rexford Foreclosure Sale, Elkwood was not entitled to credit bid at the sale or enforce the power of sale provisions under the Rexford DOT.

85.     As a result, Rexford Foreclosure Sale is void, Citivest had no authority to deliver the Rexford Foreclosure Sale Deed to Elkwood, and, accordingly, the transfer of the Rexford Home to Elkwood is void.

86.     The Trustee is entitled to a judicial declaration, pursuant to sections 760.010 *et. seq.* of the CCP, quieting title of the Rexford Home in name of Massoud's bankruptcy Estate as of February 25, 2015.

**Second Claim for Relief**

**(Set Aside Foreclosure Sale of Rexford Home)**

**(Pertains to:  Elkwood and Fieldbrook)**

87.     Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the above paragraphs as though fully set forth hereat.

16

88.     Plaintiff is informed and believes and, based thereon alleges, that Elkwood purposefully and deliberately set out to create the impression that any bidder at the Rexford Foreclosure Sale would need to bid at least $10 million to secure the property when, in reality, the property could have been secured by a bid of little more than $3 million because:  (i) the Tri-Center Loan had already been repaid and the Tri-Center Reconveyance had already been delivered to Elkwood (although Elkwood purposefully delayed recording the reconveyance until long after the Rexford Foreclosure Sale); and (ii) Elkwood had already assigned PWB Note and the Rexford DOT to Fieldbrook although the Fieldbrook Assignment was not recorded until March 6, 2015 (*i.e.*, almost two weeks after the Rexford Foreclosure Sale) and would only have been disclosed by conducting a search of title for the Chalette Home (as the assignment was not recorded against title to the Rexford Home).

89.     The failure to timely record the Fieldbrook Assignment and then recording only against title to the Chalette Home, not only misled prospective bidders as to the amount they would need to bid in order to secure the Rexford Home at the Rexford Foreclosure Sale, but failed to disclose to them that Elkwood was in fact not entitled to credit bid at the Rexford Foreclosure Sale.

90.     Further obfuscating the ability of a competitive bidder to appear and bid at the Rexford Foreclosure Sale was the fact that the Rexford Foreclosure Sale Notice incorrectly noticed the place of sale as a United States Post Office, located at 222 North Grand Avenue, Los Angeles, California 90012, instead of the Kenneth Hahn County Administrative Building which sits at that location.

91.     The foreclosure sale conducted by Citivest was improperly held, void, and should be set aside.  Citivest was not authorized to act on behalf of, or for the benefit of Elkwood because Elkwood was no longer the beneficiary of the PWB Note or the Rexford DOT at the time of the Rexford Foreclosure Sale as a result of the Fieldbrook Assignment.

92.     Upon the purported foreclosure of the Rexford Home, Elkwood, the purported foreclosing beneficiary, obtained the Rexford Home, subject to the Chase Loan (with an outstanding principal balance of approximately $2.3 million), in exchange for credit bid of $782,508.05, which it was not entitled to make.

17

93.     Plaintiff believes the value of the Rexford Home is sufficient to pay or cure the foreclosing party and pay or cure senior liens and all necessary costs to remove defaults.

94.     In the event the Court grants the requested relief in this second claim, Plaintiff represents that he shall sell the Rexford Home and use the proceeds to satisfy the valid senior claims and liens against the Rexford Home in accordance with the respective priority of such claims and liens as of the date immediately prior to the purported foreclosure of the Rexford Home and the balance of such proceeds shall be distributed in accordance with the Bankruptcy Code or order of the Court.

**Third Claim for Relief**

**(Avoid Transfer/Foreclosure of Rexford Home as an Actual Fraudulent Transfer –**

**11 U.S.C. § 548(a)(1)(A))**

**(Pertains to:  Elkwood and Fieldbrook)**

95.     Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the above paragraphs as though fully set forth hereat.

96.     Plaintiff is informed and believes, and, based thereon alleges, that Massoud and Nourafshan (through Elkwood) conspired to divert the value of the Chalette Home and the Rexford Home to Nourafshan (through Elkwood) and/or Massoud, to the detriment of the Debtors' creditors.

97.     Plaintiff is further informed and believes and, based thereon alleges that as a result of the foregoing conspiracy and concerted actions in furtherance thereof, the Estates have been deprived of at least $13 million of value.

98.     The Trustee is entitled to avoid the transfer and foreclosure of the Rexford Home pursuant to section 548(a)(i)(A) of the Bankruptcy Code.

**Fourth Claim for Relief**

**(Avoid Transfer/Foreclosure of Rexford Home as an Actual Fraudulent Transfer –**

**11 U.S.C. § 544(b) and Section 3439.04(a)(1) of California Civil Code)**

**(Pertains to:  Elkwood and Fieldbrook)**

99.     Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the above paragraphs as though fully set forth hereat.

18

100.     There is at least one creditor holding an unsecured claim against Massoud that is allowable under Bankruptcy Code Section 502 or that is not allowable only under Section 502(e) that may avoid Rexford Foreclosure Sale pursuant to Section 3439.04(a)(1) of the California Civil Code.

101.     Massoud received less than reasonably equivalent value in exchange for the Rexford Transfer.

102.     The Trustee may avoid the transfer and foreclosure of the Rexford Home pursuant to section 544(b) of the Bankruptcy Code and Section 3439.04(a) of the California Civil Code.

### Fifth Claim for Relief

### (Avoid Transfer/Foreclosure of Rexford Home as a Constructive Fraudulent Transfer –

### 11 U.S.C. § 548(a)(1)(B))

### (Pertains to:  Elkwood and Fieldbrook)

103.     Plaintiff realleges and incorporates herein by reference each and every allegations set forth in the above paragraphs as though fully set forth hereat.

104.     Plaintiff is informed and believes, and, based thereon alleges, that: (a) Massoud made the Rexford Transfer without receiving a reasonably equivalent value in exchange for the Rexford Transfer and that (b) Massoud either was: insolvent at the time of the transfer, or became insolvent as a result of the transfer; engaged or was about to engage in a business or transaction for which the remaining assets of Massoud were unreasonably small in relation to the business or transaction; and/or intended to incur, or believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due.

105.     The Trustee may avoid the transfer and foreclosure of the Rexford Home pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

DOCS_SF:93679.10 32274/001

**Sixth Claim for Relief**

**(Avoid Transfer/Foreclosure of Rexford Home as Constructive Fraudulent Transfer –**

**11 U.S.C. § 544(b) and Sections 3439.04(a)(2) and 3439.05 of California Civil Code)**

**(Pertains to:  Elkwood and Fieldbrook)**

106.    Plaintiff realleges and incorporates herein by reference each and every allegations set forth in the above paragraphs as though fully set forth hereat.

107.    Plaintiff is informed and believes, and, based thereon alleges, that there is at least one creditor of Massoud holding an unsecured claim that is allowable under Bankruptcy Code Section 502, or that is not allowable only under Bankruptcy Code Section 502(e), that may avoid the Rexford Transfer.

108.    At the time of the Rexford Transfer, Massoud:  (a) was insolvent, or became insolvent as a result of the Rexford Transfer; (b) was engaged in the business or transaction, or was about to engage in business or a transaction, for which any property remaining with Massoud was an unreasonably small capital; and/or (c) intended to incur, or believed that he would incur, debts that would be beyond his ability to pay as such debts matured.

109.    The Trustee may avoid the transfer and foreclosure of the Rexford Home pursuant to section 544(b) of the Bankruptcy Code and Sections 3439.04(a)(2) and 3439.05 of California Civil Code.

**Seventh Claim for Relief**

**(To Recover Rexford Home – 11 U.S.C. § 550)**

**(Pertains to:  Elkwood and Fieldbrook)**

110.    Plaintiff realleges and incorporates herein by reference each and every allegations set forth in the above paragraphs as though fully set forth hereat.

111.    Having avoided the transfer and foreclosure of the Rexford Home, the Trustee is entitled to recover the Rexford Home, or if the Court so orders, the value of the Rexford Home from Elkwood.

**Eighth Claim for Relief**

**(Avoid Transfer/Foreclosure of Chalette Home as an Actual Fraudulent Transfer –**

20

**11 U.S.C. § 548(a)(1)(A))**

**(Pertains to:  Fieldbrook)**

112.     Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the above paragraphs as though fully set forth hereat.

113.     Plaintiff is informed and believes, and, based thereon alleges, that Massoud and Nourafshan conspired to divert the value of the Chalette Home and the Rexford Home to Nourafshan and/or Massoud, to the detriment of the Debtors' creditors, with or without the knowledge or acquiescence of Solyman.

114.     Plaintiff is further informed and believes and, based thereon alleges that as a result of the foregoing conspiracy and concerted actions in furtherance thereof, the Estates have been deprived of at least $13 million of value.

115.     The Trustee is entitled to avoid the transfer and foreclosure of the Chalette Home pursuant to section 548(a)(i)(A) of the Bankruptcy Code.

**Ninth Claim for Relief**

**(Avoid Transfer/Foreclosure of Chalette Home as an Actual Fraudulent Transfer –**

**11 U.S.C. § 544(b) and Section 3439.04(a)(1) of California Civil Code)**

**(Pertains to:  Fieldbrook)**

116.     Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the above paragraphs as though fully set forth hereat.

117.     There is at least one creditor holding an unsecured claim against Solyman that is allowable under Bankruptcy Code Section 502, or that is not allowable only under Section 502(e), that may avoid the Chalette Foreclosure Sale pursuant to Section 3439.04(a)(1) of the California Civil Code.

118.     The Trustee may avoid the transfer and foreclosure of the Chalette Home pursuant to section 544(b) of the Bankruptcy Code and Section 3439.04(a)(1) of the California Civil Code.

21

**Tenth Claim for Relief**

**(To Recover Value of Chalette Home – 11 U.S.C. § 550)**

**(Pertains to:  Fieldbrook)**

119.    Plaintiff realleges and incorporates herein by reference each and every allegations set forth in the above paragraphs as though fully set forth hereat.

120.    Having avoided the transfer and foreclosure of the Chalette Home, the Trustee is entitled to recover the value of the Chalette Home from Elkwood and Fieldbrook.

**WHEREFORE**, Trustee prays for judgment against the Defendants (as applicable) as follows:

To quiet title of the Rexford Home in the name of Massoud's bankruptcy Estate;

To set aside and/or avoid the transfer and foreclosure of the Rexford Home as an actual and/or constructive fraudulent conveyance;

To avoid the transfer and foreclosure of the Chalette Home as an actual fraudulent conveyance;

To recover the Rexford Home, or its value, based upon avoidance of the transfers;

To recover the value of the Chalette Home, based upon avoidance of the transfers;

For costs of suit incurred herein; and

For such other and further relief as the Court may deem just and proper.

Dated:    October  18, 2017          PACHULSKI STANG ZIEHL & JONES LLP


By    */s/ Jeremy V. Richards*
_____
Jeremy V. Richards
John W. Lucas

Counsel to David K. Gottlieb,
Chapter 11 Trustee

**EXHIBIT A**

**(Tri-Center Reconveyance)**

DOCS_SF:93679.8 32274/001



**This page is part of your document - DO NOT DISCARD**



# 20150846098



**Pages:**
**0002**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**07/14/15 AT 08:00AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**L E A D S H E E T**



201507140110020

00010861834



006960310

**SEQ:**
**11**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

R26

APN: 4350-009-012

WHEN RECORDED, MAIL TO:

ELKWOOD ASSOCIATES, LLC
1 CAPITOL MALL #660
SACRAMENTO, CA 95814



07/14/2015

*20150846098*

## FULL RECONVEYANCE

TO:  <u>CHICAGO TITLE COMPANY, a California Corp., TRUSTEE</u>

   The undersigned is the legal owner and holder of the Note and Notes for the original sum of <u>TWO MILLION AND NO/100 DOLLARS, ($2,000,000)</u>, and all other indebtedness secured by Deed of Trust dated <u>February 5, 2004</u> made by <u>MASSOUD YASHOUAFAR and PARINAZ YASHOUAFAR, INDIVIDUALS</u>, Trustor, to <u>CHICAGO TITLE COMPANY</u>, Trustee, and recorded on <u>February 13, 2004</u>, as instrument number <u>04-335103</u> in Book _____, Page _____, of Official Records, in the office of the County Recorder of <u>Los Angeles County</u>, California:

   Said Note or Notes, together with all other indebtedness secured by said Deed of Trust, have been fully paid and satisfied; and you are hereby requested and directed, upon delivery to you of said Deed of Trust and said Note or Notes and upon payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel said Note or Notes above mentioned, and all other evidences of indebtedness secured by said Deed of Trust, together with the said Deed of Trust, and to reconvey, without warranty, to the parties legally entitled thereto, all the estate now held by you under the Deed of Trust.

Dated: December **3 0** , 2014

TRI-CENTER GROUP, INC., a California corporation

By: _____

   Kambiz Joseph Shabani

Its:  President

State of California     )
County of Los Angeles   ) ss.

On **December 30**, 20 **14** before me, **Kim Nguyen** , a Notary Public, personally appeared **Kambiz Joseph Shabani** , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

KIM NGUYEN
Commission # 2077709
Notary Public - California
Los Angeles County
My Comm. Expires Aug 22, 2018

# EXHIBIT B

**(PWB Note)**

DOCS_SF:93679.8 32274/001

# JSINESS LOAN AGREEMEN

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initals |
|---|---|---|---|---|---|---|---|
| $6,551,575.00 | 03-20-2009 | 02-22-2012 | 200366760 | | Port #537444 | 714 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Massoud Yashouafar
Solyman Yashouafar
660 South Figueora Street, 24th Floor
Los Angeles, CA 90017

**Lender:** Pacific Western Bank
West Covina Office
220 South Vincent Avenue
West Covina, CA 91790

---

**THIS BUSINESS LOAN AGREEMENT** dated March 20, 2009, is made and executed between Massoud Yashouafar and Solyman Yashouafar ("Borrower") and Pacific Western Bank ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.** This Agreement shall be effective as of March 20, 2009, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

    **Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

    **Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

    **Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

    **No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

    **Business Activities.** Massoud Yashouafar maintains an office at 660 South Figueora Street, 24th Floor, Los Angeles, CA 90017. Unless Massoud Yashouafar has designated otherwise in writing, the principal office is the office at which Massoud Yashouafar keeps its books and records including its records concerning the Collateral. Massoud Yashouafar will notify Lender prior to any change in the location of Massoud Yashouafar's principal office address or any change in Massoud Yashouafar's name. Massoud Yashouafar shall do all things necessary to comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Massoud Yashouafar and Massoud Yashouafar's business activities.

    Solyman Yashouafar maintains an office at 660 South Figueora Street, 24th Floor, Los Angeles, CA 90017. Unless Solyman Yashouafar has designated otherwise in writing, the principal office is the office at which Solyman Yashouafar keeps its books and records including its records concerning the Collateral. Solyman Yashouafar will notify Lender prior to any change in the location of Solyman Yashouafar's principal office address or any change in Solyman Yashouafar's name. Solyman Yashouafar shall do all things necessary to comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Solyman Yashouafar and Solyman Yashouafar's business activities.

    **Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: **None.**

    **Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents do not conflict with, result in a violation of, or constitute a default under (1) any provision of any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

    **Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

    **Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

    **Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

    **Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the

PWB_001809

**BUSINESS LOAN AGREEMENT**
**(Continued)**

Loan No: 200366760

Page 2

Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with the following:

**Additional Requirements.**

**BORROWER'S FINANCIAL REQUIREMENTS:**

**PERSONAL FINANCIAL STATEMENTS.** Borrower shall provide to Lender, as soon as available, but in no event later than thirty (30) days after your applicable tax return filing date, a self-prepared personal financial statement.

**TAX RETURNS.** Borrower shall provide to Lender, as soon as available, but in no event later than thirty (30) days after the applicable filing date for the tax reporting period ended, Federal and other governmental tax returns including all Schedules and K-1's, if applicable. If extensions are filed, copies of such extensions are to be provided immediately upon filing.

All financial reports required to be provided under this Agreement shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Borrower as being true and correct.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge,

## BUSINESS LOAN AGREEMENT
### (Continued)

levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**RECOVERY OF ADDITIONAL COSTS.** If the imposition of or any change in any law, rule, regulation or guideline, or the interpretation or application of any thereof by any court or administrative or governmental authority (including any request or policy not having the force of law) shall impose, modify or make applicable any taxes (except federal, state or local income or franchise taxes imposed on Lender), reserve requirements, capital adequacy requirements or other obligations which would (A) increase the cost to Lender for extending or maintaining the credit facilities to which this Agreement relates, (B) reduce the amounts payable to Lender under this Agreement or the Related Documents, or (C) reduce the rate of return on Lender's capital as a consequence of Lender's obligations with respect to the credit facilities to which this Agreement relates, then Borrower agrees to pay Lender such additional amounts as will compensate Lender therefor, within five (5) days after Lender's written demand for such payment, which demand shall be accompanied by an explanation of such imposition or charge and a calculation in reasonable detail of the additional amounts payable by Borrower, which explanation and calculations shall be conclusive in the absence of manifest error.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Indebtedness and Liens.** (1) Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or (3) sell with recourse any of Borrower's accounts, except to Lender.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, or (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change ownership, dissolve or transfer or sell Collateral out of the ordinary course of business.

**Loans, Acquisitions and Guaranties.** (1) Loan, invest in or advance money or assets to any other person, enterprise or entity, (2) purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

**Agreements.** Borrower will not enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any

PWB_001811

## BUSINESS LOAN AGREEMENT
### (Continued)

other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender; or (E) Lender in good faith deems itself insecure, even though no Event of Default shall have occurred.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's or any Grantor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default on Indebtedness, is curable and if Borrower or Grantor, as the case may be, has not been given a notice of a similar default within the preceding twelve (12) months, it may be cured if Borrower or Grantor, as the case may be, after receiving written notice from Lender demanding cure of such default: (1) cure the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**INTEGRATION.** The parties agree that (a) this Agreement, together with all of the Related Documents, represents the final agreement between the parties, and therefore incorporates all negotiations of the parties hereto (b) there are no unwritten oral agreements between the parties, and (c) this Agreement may not be contradicted by evidence of any prior, contemporaneous, or subsequent oral agreements or understandings of the parties.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection

**BUSINESS LOAN AGREEMENT**
**(Continued)**

Loan No: 200366760                                                                                            Page 5

services.  Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.**  Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.**  Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender.  Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters.  Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests.  Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests.  Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan.  Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law.**  This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions.  This Agreement has been accepted by Lender in the State of California.

**Choice of Venue.**  If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**Joint and Several Liability.**  All obligations of Borrower under this Agreement shall be joint and several, and all references to Borrower shall mean each and every Borrower.  This means that each Borrower signing below is responsible for all obligations in this Agreement.

**No Waiver by Lender.**  Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender.  No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right.  A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement.  No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions.  Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.**  Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement.  Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address.  For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address.  Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Severability.**  If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance.  If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable.  If the offending provision cannot be so modified, it shall be considered deleted from this Agreement.  Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.**  All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns.  Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.**  Borrower understands and agrees that in making the Loan, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents.  Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the making of the Loan and delivery to Lender of the Related Documents, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.**  Time is of the essence in the performance of this Agreement.

**DEFINITIONS.**  The following capitalized words and terms shall have the following meanings when used in this Agreement.  Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America.  Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require.  Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code.  Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**Advance.**  The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.**  The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.**  The word "Borrower" means Massoud Yashouafar and Solyman Yashouafar and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.**  The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a

# BUSINESS LOAN AGREEMENT
## (Continued)

security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Pacific Western Bank, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.** The word "Note" means the Note executed by Massoud Yashouafar and Solyman Yashouafar in the principal amount of $6,551,575.00 dated March 20, 2009, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Permitted Liens.** The words "Permitted Liens" mean (1) liens and security interests securing Indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED MARCH 20, 2009.

BORROWER:

X _____
Massoud Yashouafar

X _____
Solyman Yashouafar

**BUSINESS LOAN AGREEMENT**
**(Continued)**

Loan No: 200366760                                                                 Page 7

---

LENDER:

PACIFIC WESTERN BANK

By: _____
   **Authorized Signer**

---

LASER PRO Lending, Ver. 5.43.00.103  Copr. Harland Financial Solutions, Inc. 1997, 2005.  All Rights Reserved.  - CA  t:\HARPWNB\CFI\WIN\CFI\LPL\D40.FC  TR-10860  PR-10

PWB_001815

## EXHIBIT C

**(Rexford DOT)**

DOCS_SF:93679.8 32274/001



This page is part of your document - DO NOT DISCARD

## 20090425659




**Pages:**
**0012**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/25/09 AT 08:00AM**

Loan # 200366760
Yashouafar

| | |
|---|---|
| FEES: | 65.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 65.00 |



**L E A D S H E E T**



200903250210006

00000246682



002026336

**SEQ:**
**17**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t19

E527052

PWB_001823

RECORDATION REQUESTED BY:

**RECORDING REQUESTED BY**
**STEWART TITLE**



WHEN RECORDED MAIL TO:
Pacific Western Bank
West Covina Office
220 South Vincent Avenue
West Covina, CA  91790

SEND TAX NOTICES TO:
Massoud Yashouafar, Trustee of the Massoud and
Parinaz Yashouafar 2003 Trust under the provisions of
a trust agreement dated June 18, 2003
660 South Figueora Street, 24th Floor
Los Angeles, CA  90017

FOR RECORDER'S USE ONLY

*200282*

# DEED OF TRUST

THIS DEED OF TRUST is dated March 20, 2009, among Massoud  Yashouafar, as Trustee of the Massoud and Parinaz Yashouafar 2003 Trust, u/d/t June 18, 2003 ("Trustor"); Pacific Western Bank, whose address is West Covina Office, 220 South Vincent Avenue, West Covina, CA  91790 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Pacific Western Bank, whose address is 5900 La Place Court, Carlsbad, CA  92008 (referred to below as "Trustee").

CONVEYANCE AND GRANT.  For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Los Angeles County, State of California:

Lot 5 and the Northerly 15 feet of Lot 4 of Tract No. 4201, in the City of Beverly Hills, County of Los Angeles, State of California, as per map recorded in Book 46, Page 63 of Maps, in the Office of the County recorder of said County.

The Real Property or its address is commonly known as  910 North Rexford Drive, Beverly Hills, CA  90210. The Assessor's Parcel Number for the Real Property is 4350-009-012.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938.  In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST.  THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

TRUSTOR'S REPRESENTATIONS AND WARRANTIES.  Trustor warrants that:  (a) this Deed of Trust is executed at Borrower's request and not at the request of Lender;  (b)  Trustor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the Property;  (c) the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Trustor and do not result in a violation of any law, regulation, court decree or order applicable to Trustor;  (d) Trustor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and  (e) Lender has made no representation to Trustor about Borrower (including without limitation the creditworthiness of Borrower).

TRUSTOR'S WAIVERS.  Except as prohibited by applicable law, Trustor waives any right to require Lender to  (a) make any presentment, protest, demand, or notice of any kind, including notice of change of any terms of repayment of the Indebtedness, default by Borrower or any other guarantor or surety, any action or nonaction taken by Borrower, Lender, or any other guarantor or surety of Borrower, or the creation of new or additional Indebtedness;  (b) proceed against any person, including Borrower, before proceeding against Trustor;  (c) proceed against any collateral for the Indebtedness, including Borrower's collateral, before proceeding against Trustor;  (d) apply any payments or proceeds received against the Indebtedness in any order;  (e) give notice of the terms, time, and place of any sale of any collateral pursuant to the Uniform Commercial Code or any other law governing such sale;  (f) disclose any information about the Indebtedness, Borrower, any collateral, or any other guarantor or surety, or about any action or nonaction of Lender; or  (g) pursue any remedy or course of action in Lender's power whatsoever.

Trustor also waives any and all rights or defenses arising by reason of  (h) any disability or other defense of Borrower, any other guarantor or surety or any other person;  (i) the cessation from any cause whatsoever, other than payment in full, of the Indebtedness;  (j) the

17C

PWB_001824

**DEED OF TRUST**
**(Continued)**

Loan No: 200366760

Page 2

application of proceeds of the Indebtedness by Borrower for purposes other than the purposes understood and intended by Trustor and Lender; (k) any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the Indebtedness, or the loss or release of any collateral by operation of law or otherwise; (l) any statute of limitations in any action under this Deed of Trust or on the Indebtedness; or (m) any modification or change in terms of the Indebtedness, whatsoever, including without limitation, the renewal, extension, acceleration, or other change in the time payment of the Indebtedness is due and any change in the interest rate.

Trustor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against Borrower by the operation of Section 580d of the California Code of Civil Procedure, or otherwise.

Trustor waives all rights and defenses that Trustor may have because Borrower's obligation is secured by real property. This means among other things: (1) Lender may collect from Trustor without first foreclosing on any real or personal property collateral pledged by Borrower. (2) If Lender forecloses on any real property collateral pledged by Borrower: (A) The amount of Borrower's obligation may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price. (B) Lender may collect from Trustor even if Lender, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because Borrower's obligation is secured by real property. These rights and defenses include, but are not limited to, any rights and defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

Trustor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Trustor might otherwise be entitled under state and federal law. The rights and defenses waived include, without limitation, those provided by California laws of suretyship and guaranty, anti-deficiency laws, and the Uniform Commercial Code. Trustor acknowledges that Trustor has provided these waivers of rights and defenses with the intention that they be fully relied upon by Lender. Trustor further understands and agrees that this Deed of Trust is a separate and independent contract between Trustor and Lender, given for full and ample consideration, and is enforceable on its own terms. Until all Indebtedness is paid in full, Trustor waives any right to enforce any remedy Trustor may have against Borrower's or any other guarantor, surety, or other person, and further, Trustor waives any right to participate in any collateral for the Indebtedness now or hereafter held by Lender.

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Borrower shall pay to Lender all Indebtedness secured by this Deed of Trust as it becomes due, and Borrower and Trustor shall perform all their respective obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Trustor agree that Borrower's and Trustor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to

PWB_001825



**DEED OF TRUST**
**(Continued)**

Loan No: 200366760

Page 3

attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to below, and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $25,000.00. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $25,000.00. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default

PWB_001826

## DEED OF TRUST
### (Continued)

under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Deed of Trust, to the extent compliance with the terms of this Deed of Trust would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Deed of Trust for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to comply with any obligation to maintain Existing Indebtedness in good standing as required below, or to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Deed of Trust:

**Existing Lien.** The lien of this Deed of Trust securing the Indebtedness may be secondary and inferior to the lien securing payment of an existing obligation to Chase Manhattan Mortgage Corporation described as: Deed of Trust dated January 2, 2004 recorded on January 16, 2004 as Instrument No. 04-112689 of Official Records in the Office of County Recorder of said County. The existing obligation has a current principal balance of approximately $2,516,300.00 and is in the original principal amount of $2,516,300.00. Trustor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Trustor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Deed of Trust by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Trustor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted

## DEED OF TRUST
### (Continued)

by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower and Trustor pay all the Indebtedness when due, and Trustor otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Should Borrower or any Trustor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Trustor's property or Borrower's or any Trustor's ability to repay the Indebtedness or perform their respective obligations under this

Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Trustor or on Borrower's or Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of the Trust, the insolvency of Borrower or Trustor, the appointment of a receiver for any part of Borrower's or Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Trustor under the terms of any other agreement between Borrower or Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Right to Cure.** If any default, other than a default in payment is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the

PWB_001829

# DEED OF TRUST
## (Continued)

Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Borrower or Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Los Angeles County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.** Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier,

## DEED OF TRUST
## (Continued)

Loan No: 200366760

Page 8

or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require.  "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.**  Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions.  This Deed of Trust has been accepted by Lender in the State of California.

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**Joint and Several Liability.** All obligations of Borrower and Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor, and all references to Borrower shall mean each and every Borrower. This means that each Trustor signing below is responsible for all obligations in this Deed of Trust.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable.  If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns.  If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust.  Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Pacific Western Bank, and its successors and assigns.

**Borrower.** The word "Borrower" means Massoud Yashouafar and Solyman Yashouafar and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances

## DEED OF TRUST
### (Continued)

relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Deed of Trust.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Pacific Western Bank, its successors and assigns.

**Note.** The word "Note" means the promissory note dated March 20, 2009, **in the original principal amount of $6,551,575.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO TRUSTOR:  THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means Pacific Western Bank, whose address is 5900 La Place Court, Carlsbad, CA  92008 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means Massoud Yashouafar, Trustee of The Massoud and Parinaz Yashouafar 2003 Trust under the provisions of a trust agreement dated June 18, 2003.

**TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.**

TRUSTOR:

X _____
Massoud Yashouafar, Trustee of The Massoud and Parinaz Yashouafar 2003 Trust under the provisions of a Trust Agreement dated June 18, 2003

**DEED OF TRUST**
**(Continued)**

Loan No: 200366760

Page 10

=================================================================

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _CALIFORNIA_      }

                             } SS

COUNTY OF _Los Angeles_      }

On _March 23rd_ , 20 _09_ before me, _Michael Robert Johnson, Notary Public_
                                                          (here insert name and title of the officer)

personally appeared **Massoud Yashouafar**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

MICHAEL ROBERT JOHNSON
Commission # 1767721
Notary Public - California
Los Angeles County
My Comm. Expires Dec 1, 2010

(Seal)

---

**(DO NOT RECORD)**
## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____ , Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

_____.

Date: _____      Beneficiary: _____

                                                                By: _____

                                                                Its: _____

LASER PRO Lending, Ver. 5.43.00.103   Copr. Harland Financial Solutions, Inc. 1997, 2009.   All Rights Reserved.   - CA
I:\HARPWNB\CFIWIN\CFI\LPL\G01.FC  TR-10860  PR-10

## GOVERNMENT CODE SECTION 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS FOLLOWS:

NAME OF NOTARY: Michael Robert Johnson

DATE COMMISSION EXPIRES:  December 1, 2010

COUNTY WHERE BOND IS FILED:  Los Angeles

COMMISSION NO.:  1707721

VENDOR NO.:  NNA1

PLACE OF EXECUTION:  Irvine

DATE: 3/24/09

Stewart Title,California

Chris Maziar

PWB_001834

**<u>EXHIBIT D</u>**

**(Chalette DOT)**

DOCS_SF:93679.8 32274/001

**This page is part of your document - DO NOT DISCARD**



# 20090425658



**Pages:**
**0012**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/25/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 65.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 65.00 |

Loan # 2003667760
Yashouafar



**LEADSHEET**



200903250210006

00000246681



002026336

**SEQ:**
**16**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t19

PWB_001839

RECORDATION REQUESTED BY:

**RECORDING REQUESTED BY STEWART TITLE**

WHEN RECORDED MAIL TO:
Pacific Western Bank
West Covina Office
220 South Vincent Avenue
West Covina, CA 91790

SEND TAX NOTICES TO:
Solyman Yashouafar, Trustee of The Solyman and
Soheila Yashouafar 2004 Trust under the provisions of
a trust agreement dated March 8, 2004
660 South Figueroa Street, 24th Floor
Los Angeles, CA 90017

03/25/2009

*20090425658*

FOR RECORDER'S USE ONLY

200282

# DEED OF TRUST

THIS DEED OF TRUST is dated March 20, 2009, among Solyman Yashouafar, as Trustee of the Solyman and Soheila Yashouafar 2004 Trust dated March 8, 2004 ("Trustor"); Pacific Western Bank, whose address is West Covina Office, 220 South Vincent Avenue, West Covina, CA 91790 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Pacific Western Bank, whose address is 5900 La Place Court, Carlsbad, CA 92008 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Los Angeles County, State of California:

Lot 34, of Tract No. 24484, in the City of Beverly Hills, County of Los Angeles, State of California, as per map recorded in Book 657, Pages 99 and 100 of Maps, in the Office of the County recorder of said County.

The Real Property or its address is commonly known as 580 Chalette Drive, Beverly Hills, CA 90210. The Assessor's Parcel Number for the Real Property is 4391-009-002.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

TRUSTOR'S REPRESENTATIONS AND WARRANTIES. Trustor warrants that: (a) this Deed of Trust is executed at Borrower's request and not at the request of Lender; (b) Trustor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the Property; (c) the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Trustor and do not result in a violation of any law, regulation, court decree or order applicable to Trustor; (d) Trustor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Trustor about Borrower (including without limitation the creditworthiness of Borrower).

TRUSTOR'S WAIVERS. Except as prohibited by applicable law, Trustor waives any right to require Lender to (a) make any presentment, protest, demand, or notice of any kind, including notice of change of any terms of repayment of the Indebtedness, default by Borrower or any other guarantor or surety, any action or nonaction taken by Borrower, Lender, or any other guarantor or surety of Borrower, or the creation of new or additional Indebtedness; (b) proceed against any person, including Borrower, before proceeding against Trustor; (c) proceed against any collateral for the Indebtedness, including Borrower's collateral, before proceeding against Trustor; (d) apply any payments or proceeds received against the Indebtedness in any order; (e) give notice of the terms, time, and place of any sale of any collateral pursuant to the Uniform Commercial Code or any other law governing such sale; (f) disclose any information about the Indebtedness, Borrower, any collateral, or any other guarantor or surety, or about any action or nonaction of Lender; or (g) pursue any remedy or course of action in Lender's power whatsoever.

Trustor also waives any and all rights or defenses arising by reason of (h) any disability or other defense of Borrower, any other guarantor or surety or any other person; (i) the cessation from any cause whatsoever, other than payment in full, of the Indebtedness; (j) the

16C

PWB_001840

## DEED OF TRUST
## (Continued)

application of proceeds of the Indebtedness by Borrower for purposes other than the purposes understood and intended by Trustor and Lender; (k) any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the Indebtedness, or the loss or release of any collateral by operation of law or otherwise; (l) any statute of limitations in any action under this Deed of Trust or on the Indebtedness; or (m) any modification or change in terms of the Indebtedness, whatsoever, including without limitation, the renewal, extension, acceleration, or other change in the time payment of the Indebtedness is due and any change in the interest rate.

Trustor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against Borrower by the operation of Section 580d of the California Code of Civil Procedure, or otherwise.

Trustor waives all rights and defenses that Trustor may have because Borrower's obligation is secured by real property. This means among other things: (1) Lender may collect from Trustor without first foreclosing on any real or personal property collateral pledged by Borrower. (2) If Lender forecloses on any real property collateral pledged by Borrower: (A) The amount of Borrower's obligation may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price. (B) Lender may collect from Trustor even if Lender, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because Borrower's obligation is secured by real property. These rights and defenses include, but are not limited to, any rights and defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

Trustor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Trustor might otherwise be entitled under state and federal law. The rights and defenses waived include, without limitation, those provided by California laws of suretyship and guaranty, anti-deficiency laws, and the Uniform Commercial Code. Trustor acknowledges that Trustor has provided these waivers of rights and defenses with the intention that they be fully relied upon by Lender. Trustor further understands and agrees that this Deed of Trust is a separate and independent contract between Trustor and Lender, given for full and ample consideration, and is enforceable on its own terms. Until all Indebtedness is paid in full, Trustor waives any right to enforce any remedy Trustor may have against Borrower's or any other guarantor, surety, or other person, and further, Trustor waives any right to participate in any collateral for the Indebtedness now or hereafter held by Lender.

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Borrower shall pay to Lender all Indebtedness secured by this Deed of Trust as it becomes due, and Borrower and Trustor shall perform all their respective obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Trustor agree that Borrower's and Trustor's possession and use of the Property shall be governed by the following provisions:

    **Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

    **Duty to Maintain.** Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

    **Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

    **Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, cley, scoria, soil, gravel or rock products without Lender's prior written consent.

    **Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

    **Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to

**DEED OF TRUST**
**(Continued)**

attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to below, and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $25,000.00. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $25,000.00. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default

# DEED OF TRUST
**(Continued)**

under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Deed of Trust, to the extent compliance with the terms of this Deed of Trust would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Deed of Trust for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to comply with any obligation to maintain Existing Indebtedness in good standing as required below, or to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Deed of Trust:

**Existing Lien.** The lien of this Deed of Trust securing the Indebtedness may be secondary and inferior to the lien securing payment of an existing obligation to Chase Manhattan Mortgage Corporation described as: Deed of Trust dated January 27, 2004 recorded on February 13, 2004 as Instrument No. 04-332465 of Official Records in the Office of County Recorder of said County. The existing obligation has a current principal balance of approximately $1,475,000.00 and is in the original principal amount of $1,475,000.00. Trustor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Trustor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Deed of Trust by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Trustor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted

# DEED OF TRUST
## (Continued)

6

by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Borrower fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower and Trustor pay all the Indebtedness when due, and Trustor otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Should Borrower or any Trustor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Trustor's property or Borrower's or any Trustor's ability to repay the Indebtedness or perform their respective obligations under this

# DEED OF TRUST
## (Continued)

Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Trustor or on Borrower's or Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of the Trust, the insolvency of Borrower or Trustor, the appointment of a receiver for any part of Borrower's or Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Trustor under the terms of any other agreement between Borrower or Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Right to Cure.** If any default, other than a default in payment is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the

PWB_001845

# DEED OF TRUST
# (Continued)

Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

Appoint Receiver. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

Tenancy at Sufferance. If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Borrower or Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

Other Remedies. Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

Notice of Sale. Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

Sale of the Property. To the extent permitted by applicable law, Borrower and Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

Attorneys' Fees; Expenses. If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

Rights of Trustee. Trustee shall have all of the rights and duties of Lender as set forth in this section.

POWERS AND OBLIGATIONS OF TRUSTEE. The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

Powers of Trustee. In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

Obligations to Notify. Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

Trustee. Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

Successor Trustee. Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Los Angeles County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

Acceptance by Trustee. Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

NOTICES. Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier,

# DEED OF TRUST
## (Continued)

or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** .Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.**

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**Joint and Several Liability.** All obligations of Borrower and Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor, and all references to Borrower shall mean each and every Borrower. This means that each Trustor signing below is responsible for all obligations in this Deed of Trust.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Pacific Western Bank, and its successors and assigns.

**Borrower.** The word "Borrower" means Massoud Yashouafar and Solyman Yashouafar and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances

PWB_001847

# DEED OF TRUST
## (Continued)

relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Deed of Trust.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Pacific Western Bank, its successors and assigns.

**Note.** The word "Note" means the promissory note dated March 20, 2009, **in the original principal amount of $6,551,575.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. NOTICE TO TRUSTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means Pacific Western Bank, whose address is 5900 La Place Court, Carlsbad, CA  92008 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means Solyman Yashouafar, Trustee of The Solyman and Soheila Yashouafar 2004 Trust under the provisions of a trust agreement dated March 8, 2004.

**TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.**

**TRUSTOR:**

X _____

Solyman Yashouafar, Trustee of The Solyman and Soheila Yashouafar 2004 Trust
under the provisions of a Trust Agreement dated March 8, 2004

**DEED OF TRUST**
**(Continued)**

Loan No: 200366760

Page 10

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _CALIFORNIA_ )
  ) SS
COUNTY OF _Los Angeles_ )

On _MARCH 23rd_ , 20 _09_ before me, _Michael Robert Johnson / Notary Public_
(here insert name and title of the officer)

personally appeared Solyman Yashouafar, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

MICHAEL ROBERT JOHNSON
Commission # 1707721
Notary Public - California (seal)
Los Angeles County
My Comm. Expires Dec 1, 2010

---

**(DO NOT RECORD)**
## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____ , Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

_____

Date: _____

Beneficiary: _____

By: _____

Its: _____

LASER PRO Lending, Ver. 5.43.00.103  Copr. Harland Financial Solutions, Inc. 1997, 2009.  All Rights Reserved.  - CA
I:\HARPWNB\CFIWIN\CFI\LPL\G01.FC TR-10860 PR-10

PWB_001849

## GOVERNMENT CODE SECTION 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE
NOTARY SEAL ON THE DOCUMENT TO WHICH THIS
STATEMENT IS ATTACHED READS AS FOLLOWS:

NAME OF NOTARY: Michael Robert Johnson

DATE COMMISSION EXPIRES:  December 1, 2010

COUNTY WHERE BOND IS FILED:  Los Angeles

COMMISSION NO.:  1707721

VENDOR NO.:  NNA1

PLACE OF EXECUTION:  Irvine

DATE: 3/24/09

Stewart Title,California

Chris Maziar

# TRUST CERTIFICATE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $6,551,575.00 | 03-20-2009 | 02-22-2012 | 200366760 | | Port #537444 | 714 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Massoud Yashouafar
Solyman Yashouafar
660 South Figueora Street, 24th Floor
Los Angeles, CA 90017

**Lender:** Pacific Western Bank
West Covina Office
220 South Vincent Avenue
West Covina, CA 91790

**Trust:** The Massoud and Parinaz Yashouafar 2003 Trust
660 South Figueora Street, 24th Floor
Los Angeles, CA 90017

**I, THE UNDERSIGNED, DO HEREBY CERTIFY THAT:**

**CERTIFICATION OF TRUST.** This Trust Certificate is given by each of the Trustee voluntarily, pursuant to Section 18100.5 of the California Probate Code and under penalty of perjury, intending that the facts set forth in this Certificate be relied upon by Lender as true and correct.

(A) The Trust is in existence as of this date and is evidenced by a Trust Instrument executed on June 18, 2003.

(B) The name of the Trustee is: Massoud Yashouafar.

(C) The names of the Trust Settlors are: Massoud Yashouafar and Parinaz Yashouafar, also known as Parinaz Nourafshan.

(D) The names of the Successor Trustees are: Solyman Yashouafar and Jack Nourafshan.

(E) The powers of Trustee include the power to do, or perform, all of the acts and things on behalf of the Trust set forth in this Certificate.

(F) The Trust is revocable, and the names of the persons holding any power to revoke the trust are: Massoud Yashouafar and Parinaz Yashouafar, also known as Parinaz Nourafshan.

(G) The trust instrument requires the signature of any 1 Trustee to exercise any powers of the Trustee.

(H) The Trust's Social Security Number is 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.

(I) Title to Trust assets is to be taken in the name of Massoud Yashouafar, as Trustee of the Massoud and Parinaz Yashouafar 2003 Trust, u/d/t June 18, 2003.

(J) Trustee hereby certifies that the Trust has not been revoked, modified, or amended in any manner which would cause the representations contained in this Certificate to be incorrect and this Certificate is being signed by all of the currently acting Trustees of the Trust. Trustee acknowledges and agrees that Lender may require Trustee to provide copies of excerpts from the trust instrument and amendments which designate the Trustee and confer upon the Trustee the power to act in these transactions, and that Lender may require such further identification or legal opinion supporting the Trustee authority and power as Lender shall deem necessary and prudent.

**BORROWING CERTIFICATE.** Trustee, for and on behalf of the Trust, is authorized and empowered on behalf of the Trust:

**Grant Security.** To mortgage, pledge, transfer, endorse, hypothecate, or otherwise encumber and deliver to Lender any property now or hereafter belonging to the Trust or in which the Trust now or hereafter may have an interest, including without limitation all of the Trust's real property and all of the Trust's personal property (tangible or intangible), as security for the payment of any loans, any promissory notes, or any other or further indebtedness of Massoud Yashouafar and Solyman Yashouafar to Lender at any time owing, however the same may be evidenced. Such property may be mortgaged, pledged, transferred, endorsed, hypothecated or encumbered at the time such loans are obtained or such indebtedness is incurred, or at any other time or times, and may be either in addition to or in lieu of any property theretofore mortgaged, pledged, transferred, endorsed, hypothecated or encumbered. The provisions of this Certificate authorizing or relating to the pledge, mortgage, transfer, endorsement, hypothecation, granting of a security interest in, or in any way encumbering, the assets of the Trust shall include, without limitation, doing so in order to lend collateral security for the indebtedness, now or hereafter existing, and of any nature whatsoever, of Massoud Yashouafar and Solyman Yashouafar to Lender. The Trustees have considered the value to the Trust of lending collateral in support of such indebtedness, and the Trustees represent to Lender that the Trust is benefited by doing so.

**Execute Security Documents.** To execute and deliver to Lender the forms of mortgage, deed of trust, pledge agreement, hypothecation agreement, and other security agreements and financing statements which Lender may require and which shall evidence the terms and conditions under and pursuant to which such liens and encumbrances, or any of them, are given; and also to execute and deliver to Lender any other written instruments, any chattel paper, or any other collateral, of any kind or nature, which Lender may deem necessary or proper in connection with or pertaining to the giving of the liens and encumbrances.

**Negotiate Items.** To draw, endorse, and discount with Lender all drafts, trade acceptances, promissory notes, or other evidences of indebtedness payable to or belonging to the Trust or in which the Trust may have an interest, and either to receive cash for the same or to cause such proceeds to be credited to the Trust's account with Lender, or to cause such other disposition of the proceeds derived therefrom as he or she may deem advisable.

**Further Acts.** To do and perform such other acts and things and to execute and deliver such other documents and agreements as the Trustee may in his or her discretion deem reasonably necessary or proper in order to carry into effect the provisions of this Certificate.

**TERMINATION OR TRANSFER.** Trustees agree that the Trustees will provide to Lender written notice prior to any termination or revocation of the Trust or prior to the transfer from the Trust of any Trust asset upon which Lender may be relying for repayment of the Trust's Indebtedness to Lender.

**MULTIPLE BORROWERS.** The Trust may enter into transactions in which there are multiple borrowers on obligations to Lender and the Trust understands and agrees that, with or without notice to the Trust, Lender may discharge or release any party or collateral securing an obligation, grant any extension of time for payment, delay enforcing any rights granted to Lender, or take any other action or inaction, without the loss to Lender of any of it rights against the Trust; and that Lender may modify transactions without the consent of or notice to anyone other than the party with whom the modification is made.

**NOTICES TO LENDER.** The Trustees will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (A) change in the Trust's name; (B) change in the Trust's assumed business name(s); (C) change in the Trustees of the Trust; (D) change in the authorized signer(s); (E) change in the Trust's state of organization; (F) conversion of the Trust to a new or different type of business entity; or (G) change in any other aspect of the Trust that directly or indirectly relates to any agreements between the Trust and Lender. No change in the Trust's name or state of organization will take effect until after Lender has received notice.

**FURTHER TRUST CERTIFICATIONS.** The persons named above are duly appointed and acting Trustee of the Trust and is duly authorized to act on behalf of the Trust in the manner described above; I am familiar with the purpose of the Indebtedness; the Indebtedness proceeds are to be used for a legitimate trust purpose and for the benefit of the Trust and its beneficiaries.

**CONTINUING VALIDITY.** This Certificate shall be continuing, shall remain in full force and effect and Lender may rely on it until written notice of its revocation shall have been delivered to and received by Lender at Lender's address shown above (or such addresses as Lender may designate from time to time). Any such notice shall not affect any of the Trust's agreements or commitments in effect at the time notice is given.

**IN TESTIMONY WHEREOF, I have hereunto set my hand.**

I have read all the provisions of this Certificate, and I personally and on behalf of the Trust certify that all statements and representations made in this Certificate are true and correct. This Trust Certificate is dated March 20, 2009.

CERTIFIED TO AND ATTESTED BY:

X

Massoud Yashouafar, Trustee of The Massoud and Parinaz Yashouafar 2003 Trust under the provisions of a Trust Agreement dated June 18, 2003

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _California_                                )
                                                      ) SS
COUNTY OF _Los Angeles_                              )

On _March 23rd_, 20 _09_ before me, _Michael Johnson_
                                          (here insert name and title of the officer)

personally appeared **Massoud Yashouafar**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

MICHAEL ROBERT JOHNSON
Commission # 1707721
Notary Public - California
Los Angeles County
My Comm. Expires Dec 1, 2010

(Seal)

# TRUST CERTIFICATE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $6,551,575.00 | 03-20-2009 | 02-22-2012 | 200366760 | | Port#537444 | 714 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  Massoud Yashouafar
Solyman Yashouafar
660 South Figueroa Street, 24th Floor
Los Angeles, CA 90017

**Lender:**  Pacific Western Bank
West Covina Office
220 West Vincent Avenue
West Covina, CA 91790

**Trust:**  The Solyman and Soheila Yashouafar 2004 Trust
660 South Figueroa Street, 24th Floor
Los Angeles, CA 90017

**I, THE UNDERSIGNED, DO HEREBY CERTIFY THAT:**

**CERTIFICATION OF TRUST.** This Trust Certificate is given by each of the Trustee voluntarily, pursuant to Section 18100.5 of the California Probate Code and under penalty of perjury, intending that the facts set forth in this Certificate be relied upon by Lender as true and correct.

(A) The Trust is in existence as of this date and is evidenced by a Trust instrument executed on March 8, 2004.

(B) The name of the Trustee is: Solyman Yashouafar.

(C) The names of the Trust Settlor are: Solyman Yashouafar and Soheila Yashouafar.

(D) The names of the Successor Trustee are: Massoud Yashouafar, Rodney Yashouafar, and Raymond Yashouafar.

(E) The powers of Trustee include the power to do, or perform, all of the acts and things on behalf of the Trust set forth in this Certificate.

(F) The Trust is revocable, and the names of the persons holding any power to revoke the trust are: Solyman Yashouafar and Soheila Yashouafar.

(G) The trust instrument requires the signature of any 1 Trustee to exercise any powers of the Trustee.

(H) The Trust's Social Security Number is 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.

(I) Title to Trust assets is to be taken in the name of Solyman Yashouafar, as Trustee of the Solyman and Soheila Yashouafar 2004 Trust dated March 8, 2004.

(J) Trustee hereby certifies that the Trust has not been revoked, modified, or amended in any manner which would cause the representations contained in this Certificate to be incorrect and this Certificate is being signed by all of the currently acting Trustees of the Trust. Trustee acknowledges and agrees that Lender may require Trustee to provide copies of excerpts from the trust instrument and amendments which designate the Trustee and confer upon the Trustee the power to act in these transactions, and that Lender may require such further identification or legal opinion supporting the Trustee authority and power as Lender shall deem necessary and prudent.

**BORROWING CERTIFICATE.** Trustee, for and on behalf of the Trust, is authorized and empowered on behalf of the Trust:

**Grant Security.** To mortgage, pledge, transfer, endorse, hypothecate, or otherwise encumber and deliver to Lender any property now or hereafter belonging to the Trust or in which the Trust now or hereafter may have an interest, including without limitation all of the Trust's real property and all of the Trust's personal property (tangible or intangible), as security for the payment of any loans, any promissory notes, or any other or further indebtedness of Massoud Yashouafar and Solyman Yashouafar to Lender at any time owing, however the same may be evidenced. Such property may be mortgaged, pledged, transferred, endorsed, hypothecated or encumbered at the time such loans are obtained or such indebtedness is incurred, or at any other time or times, and may be either in addition to or in lieu of any property theretofore mortgaged, pledged, transferred, endorsed, hypothecated or encumbered. The provisions of this Certificate authorizing or relating to the pledge, mortgage, transfer, endorsement, hypothecation, granting of a security interest in, or in any way encumbering, the assets of the Trust shall include, without limitation, doing so in order to lend collateral security for the indebtedness, now or hereafter existing, and of any nature whatsoever, of Massoud Yashouafar and Solyman Yashouafar to Lender. The Trustees have considered the value to the Trust of lending collateral in support of such indebtedness, and the Trustees represent to Lender that the Trust is benefited by doing so.

**Execute Security Documents.** To execute and deliver to Lender the forms of mortgage, deed of trust, pledge agreement, hypothecation agreement, and other security agreements and financing statements which Lender may require and which shall evidence the terms and conditions under and pursuant to which such liens and encumbrances, or any of them, are given; and also to execute and deliver to Lender any other written instruments, any chattel paper, or any other collateral, of any kind or nature, which Lender may deem necessary or proper in connection with or pertaining to the giving of the liens and encumbrances.

**Negotiate Items.** To draw, endorse, and discount with Lender all drafts, trade acceptances, promissory notes, or other evidences of indebtedness payable to or belonging to the Trust or in which the Trust may have an interest, and either to receive cash for the same or to cause such proceeds to be credited to the Trust's account with Lender, or to cause such other disposition of the proceeds derived therefrom as he or she may deem advisable.

**Further Acts.** To do and perform such other acts and things and to execute and deliver such other documents and agreements as the Trustee may in his or her discretion deem reasonably necessary or proper in order to carry into effect the provisions of this Certificate.

Yashouafar-Loan #200366760
ist Certificate (Solyman) (03-2009)

1

PWB_001853

**TERMINATION OR TRANSFER.** Trustees agree that the Trustees will provide to Lender written notice prior to any termination or revocation of the Trust or prior to the transfer from the Trust of any Trust asset upon which Lender may be relying for repayment of the Trust's Indebtedness to Lender.

**MULTIPLE BORROWERS.** The Trust may enter into transactions in which there are multiple borrowers on obligations to Lender and the Trust understands and agrees that, with or without notice to the Trust, Lender may discharge or release any party or collateral securing an obligation, grant any extension of time for payment, delay enforcing any rights granted to Lender, or take any other action or inaction, without the loss to Lender of any of it rights against the Trust; and that Lender may modify transactions without the consent of or notice to anyone other than the party with whom the modification is made.

**NOTICES TO LENDER.** The Trustees will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (A) change in the Trust's name; (B) change in the Trust's assumed business name(s); (C) change in the Trustees of the Trust; (D) change in the authorized signer(s); (E) change in the Trust's state of organization; (F) conversion of the Trust to a new or different type of business entity; or (G) change in any other aspect of the Trust that directly or indirectly relates to any agreements between the Trust and Lender. No change in the Trust's name or state of organization will take effect until after Lender has received notice.

**FURTHER TRUST CERTIFICATIONS.** The persons named above are duly appointed and acting Trustee of the Trust and is each on behalf of the Trust in the manner described above; I am familiar with the purpose of the Indebtedness; the Indebtedness proceeds are to be used for a legitimate trust purpose and for the benefit of the Trust and its beneficiaries.

**CONTINUING VALIDITY.** This Certificate shall be continuing, shall remain in full force and effect and Lender may rely on it until written notice of its revocation shall have been delivered to and received by Lender at Lender's address shown above (or such addresses as Lender may designate from time to time). Any such notice shall not affect any of the Trust's agreements or commitments in effect at the time notice is given.

**IN TESTIMONY WHEREOF, I have hereunto set my hand.**

I have read all the provisions of this Certificate, and I personally and on behalf of the Trust certify that all statements and representations made in this Certificate are true and correct. This Trust Certificate is dated March 20, 2009.

CERTIFIED TO AND ATTESTED BY:

X _____

Solyman Yashouafar, Trustee of the Solyman and
Soheila Yashouafar 2004 Trust under the
provisions of a Trust Agreement dated March 8,
2004

# CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _CALIFORNIA_ )
 ) SS
COUNTY OF _Los Angeles_ )

On _March 25__, 20 _09_ before me, _Michael Johnson_
(here insert name and title of the officer)

personally appeared **Solyman Yashouafar**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

MICHAEL ROBERT JOHNSON
Commission # 1707721
Notary Public - California
Los Angeles County
My Comm. Expires Dec 1, 2010

(Seal)

Yashouafar-Loan #200386760
Trust Certificate (Solyman) (03-2009)

2

PWB_001854

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBIT E

**(Fieldbrook Assignment)**

**This page is part of your document - DO NOT DISCARD**



# 20150248925



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**03/06/15 AT 03:47PM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



**201503061890029**

**00010256605**



**006685990**

**SEQ:**
**02**

**DAR - Counter (Upfront Scan)**



**THIS FORM IS NOT TO BE DUPLICATED**

*E503741*

RECORDING REQUESTED BY

**RUTGERS PROPERTIES**

AND WHEN RECORDED MAIL TO:

| | |
|---|---|
| NAME | FIELDBROOK, INC. |
| ADDRESS | 16633 VENTURA BLVD., 6 FLOOR |
| STATE & ZIP | ENCINO, CA 91436 |

# ASSIGNMENT OF DEED OF TRUST AND PROMISSORY NOTE

| TITLE ORDER NO. | ESCROW NO. CHALETTE | APN NO. 4391-009-002 |
|---|---|---|

For Value Received, the undersigned ELKWOOD ASSOCIATES, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY hereby grants, assigns, transfers and conveys to FIELDBROOK, INC., A CALIFORNIA CORPORATION all of its right, title and beneficial interest in and to that certain Deed of Trust dated MARCH 20, 2009 executed by SOLYMAN YASHOUAFAR, AS TRUSTEE OF THE SOLYMAN AND SOHEILA YASHOUAFAR 2004 TRUST DATED MARCH 8, 2004 as Trustor, to PACIFIC WESTERN BANK, as Trustee, for the benefit of PACIFIC WESTERN BANK as beneficiary and recorded as Instrument No. 20090425658, on March 25, 2009, in Book_____, Page _____ of Official Records in the Office of the County Recorder of Los Angeles County, California, describing land in said county as,

Lot 34 in Tract No. 24484, in the city of Beverly Hills, County of Los Angeles, State of California, as per map recorded in book 657, pages 99 and 100 of maps, in the office of the county recorder of said county.

A.P.N. 4391-009-002   AKA: 580 CHALETTE DRIVE, BEVERLY HILLS, CA 90210

Together with the Secured Promissory Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust, any liens, security interest, and remedies arising thereunder.  This Assignment is made without recourse, representateions or warranties of any kind except as may be set forth in any Loan Sale Agreement that may be between assignor and assignee.

**A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of the document .**

Dated: February 18, 2015

ELKWOOD ASSOCIATES, LLC

BY: _____
Thelma S. Guerrero, Manager

STATE OF CALIFORNIA          }
COUNTY OF  LOS ANGELES} S.S.

On FEBRUARY 18, 2015 before me, EDWARD M. MAZZARINO, (a Notary Public), personally appeared Thelma S. Guerrero, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

EDWARD M. MAZZARINO
COMM. # 2015231
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
COMM. EXPIRES MARCH 26, 2017

DOCUMENT PROVIDED BY CITIVEST FINANCIAL SERVICES, INC.

ASSGN.DOC

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California

County of _Los Angeles_

On _3-18-15_ before me _Edward M Mazzarino_ ,Notary Public

<div align="center">(Insert Name of Notary Public and Title)</div>

personally appeared _Thelma S. Guerrero_ ,

who proved to me on the basis of satisfactory evidence to be the person(s) whose

name(s) is/are subscribed to the within instrument and acknowledged to me that

he/she/they executed the same in his/her/their authorized capacity(ies), and that by

his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of

which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the

foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

EDWARD M. MAZZARINO
COMM. # 2015231
NOTARY PUBLIC · CALIFORNIA
LOS ANGELES COUNTY
COMM. EXPIRES MARCH 26, 2017

1

**<u>EXHIBIT F</u>**

2

**(Memo dated February 17, 2015 from Guerrero)**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# FIELDBROOK INC.

16633 Ventura Blvd. 6 floor Los Angeles, CA 91436

Memo Dated February 17TH 2015

CITIVEST
Financial Services, INC
297 S. Orange Grove Blvd.
Pasadena, CA 91105

Dear Mr. Mazzarino,

This is to inform you that we have assigned the Deed of Trust for the Chalette
Property to Fieldbrook, Inc. Along with a dollar portion of the note secured by
that Deed of Trust on the Property.

Elkwood will be acting as agent for Fieldbrook, Inc. concerning the finalization of
the foreclosure that you are currently processing. Our instructions are the only
instructions that you are to follow other than a direct communication from
Fieldbrook, Inc.

The portion of the note that has been transferred to Fieldbrook, Inc. is
$5,800,000.00. As agent for Fieldbrook, Inc. you are hereby instructed to open
beneficiary bid at the upcoming auction on February 20th at $5, 800,000.00. This
will be their only bid.

You are hereby further instructed to open Elkwood's bid at your February 23rd
auction, for the Rexford Property, at the remaining balance of the note (as stated
in your beneficiary statement of facts and agreement dated January 12,2015)
plus your foreclosure fees.

Sincerely,

Thelma Guerrero



010

**<u>EXHIBIT G</u>**

**(Chalette Foreclosure Sale Deed)**

**This page is part of your document - DO NOT DISCARD**



# 20150248926



**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**03/06/15 AT 03:47PM**

Pages:
0004

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |



**L E A D S H E E T**

201503061890029

00010256606

006685990

**SEQ:
03**

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**

E503741



03/06/2015

*20150248926*

RECORDING REQUESTED BY

RUTGERS PROPERTIES

WHEN RECORDED MAIL TO
AND MAIL TAX STATEMENTS TO

NAME:     FIELDBROOK, INC.
ADDRESS:  16633 VENTURA BLVD., 6 FL
CITY:     LOS ANGELES
STATE, ZIP: CA 91436

---

Trustee's Sales Number: 15-01-1002a                     Assessor's Parcel Number: 4391-009-002
X THE UNDERSIGNED DECLARES
DOCUMENTARY TRANSFER TAX $ NONE

_XX_ GRANTEE _XX_ WAS ____ WAS NOT THE FORECLOSING BENEFICIARY: CONSIDERATION $5,800,000.00
         UNPAID DEBT: 5,800,000.00  NON-EXEMPT AMOUNT: $ 0.00

_____ COMPUTED ON THE CONSIDERATION OR VALUE OF PROPERTY CONVEYED.

_____ COMPUTED ON THE CONSIDERATION OR VALUE LESS LIENS OR ENCUMBRANCES REMAINING AT TIME OF
      SALE

_____ UNINCORPORATED AREA ___XX___ CITY OF: BEVERLY HILLS

---

## TRUSTEE'S DEED UPON SALE

CITIVEST FINANCIAL SERVICES, INC., A CORPORATION (HEREIN AFTER CALLED TRUSTEE),
HERBY GRANTS AND CONVEYS, BUT WITHOUT COVENANT OR WARRANTY OF ANY KIND,
EXPRESSED OR IMPLIED, REGARDING TITLE TO SAID PROPERTY OR ANY ENCUMBRANCES
THEREON TO

    FIELDBROOK INC., A CALIFORNIA CORPORATION

(HEREIN CALLED GRANTEE), THE REAL PROPERTY IN THE CITY OF BEVERLY HILLS,
COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

Lot 34 in Tract No. 24484, in the city of Beverly Hills, County of Los Angeles, State of
California, as per map recorded in book 657, pages 99 and 100 of maps, in the office of
the county recorder of said county.

A.P.N. 4391-009-002
AKA: 580 CHALETTE DRIVE, BEVERLY HILLS, CA 90210

THE CONVEYANCE IS MADE PURSUANT TO THE AUTHORITY AND POWERS VESTED IN
SAID TRUSTEE, AS TRUSTEE, OR SUCCESSOR TRUSTEE, OR SUBSTITUTED TRUSTEE,
UNDER THAT CERTAIN DEED OF TRUST EXECUTED BY SOLYMAN AND SOHEILA
YASHOUAFAR 2004 TRUST DATED 3-8-2004 ("TRUSTOR"), RECORDED 03-25-2009, AS
DOCUMENT NO. 2009-0425658, OF OFFICIAL RECORDS OF LOS ANGELES COUNTY,
CALIFORNIA; AND PURSUANT TO THE NOTICE OF DEFAULT RECORDED 1/27/2014, AS
INSTRUMENT NO. 2014-0086798, IN BOOK,        PAGE        , OF OFFICIAL RECORDS OF
SAID COUNTY.   TRUSTEE HAVING COMPLIED WITH ALL APPLICABLE STATUTORY
REQUIREMENTS OF THE STATE OF CALIFORNIA AND PERFORMED ALL DUTIES REQUIRED
BY SAID DEED OF TRUST, INCLUDING, AMONG OTHER THINGS, AS APPLICABLE, THE
MAILING OF COPIES OF NOTICES OR THE PUBLICATION OF A COPY OF THE NOTICE OF
DEFAULT OR THE PERSONAL DELIVERY OF THE COPY OF THE NOTICE OF DEFAULT OR
THE POSTING OF THE COPIES OF THE NOTICE OF SALE OR THE PUBLICATION OF A COPY
THEREOF.

1

CITIVEST 00136
003

AT THE TIME AND PLACE FIXED IN THE NOTICE OF TRUSTEE'S NOTICE OF SALE, SAID TRUSTEE DID SELL SAID PROPERTY ABOVE DESCRIBED AT PUBLIC AUCTION ON FEBRUARY 20, 2015 TO SAID GRANTEE, BEING THE HIGHEST BIDDER THEREFORE, FOR $5,800,000.00, CASH, LAWFUL MONEY OF THE UNITED STATES, IN SATISFACTION OF THE INDEBTEDNESS THEN SECURED BY SAID DEED OF TRUST.

X **A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of the document .**

DATED: FEBRUARY 25, 2015                    CITIVEST FINANCIAL SERVICES, INC.

BY: _R. M. Sandoval_
R. M. SANDOVAL, V. P.

X

STATE OF CALIFORNIA          }
COUNTY OF LOS ANGELES } S.S.

On **FEBRUARY 25, 2015** before me, **EDWARD M. MAZZARINO**, (A Notary Public), personally appeared **R.M. SANDOVAL**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

EDWARD M. MAZZARINO
COMM. # 2015231
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
COMM. EXPIRES MARCH 26, 2017

DOCUMENT PROVIDED BY CITIVEST FINANCIAL SERVICES                    TRUSTEE'S DEED.DOC

2

CITIVEST 00137
004

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California

County of _Los Angeles_

On _2-15-15_ before me, _Edward M. Mazzarino_ , Notary Public
(Insert Name of Notary Public and Title)

personally appeared _R. M. Sandoval_

who proved to me on the basis of satisfactory evidence to be the person(s) whose

name(s) is/are subscribed to the within instrument and acknowledged to me that

he/she/they executed the same in his/her/their authorized capacity(ies), and that by

his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of

which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the

foregoing paragraph is true and correct.

EDWARD M. MAZZARINO
COMM. # 2015231
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
COMM. EXPIRES MARCH 26, 2017

WITNESS my hand and official seal.

Signature _____ (Seal)

# **EXHIBIT H**

## **(Rexford Foreclosure Sale Deed)**

DOCS_SF:93679.8 32274/001

**This page is part of your document - DO NOT DISCARD**



## 20150248924



Pages:
0004

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**03/06/15 AT 03:47PM**

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |



**L E A D S H E E T**



201503061890029

00010256604



006685990

**SEQ:**
**01**

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**

E593341

CITIVEST 00061
002

**RECORDING REQUESTED BY**

**ELKWOOD ASSOCIATES, LLC**

**WHEN RECORDED MAIL TO**
**AND MAIL TAX STATEMENTS TO**

NAME:    ELKWOOD ASSOCIATES, LLC
ADDRESS:  1 CAPITOL MALL #660
CITY:      SACRAMENTO
STATE, ZIP:  CA 95814

03/06/2015

*20150248924*

---

Trustee's Sales Number:  15-01-1002b        Assessor's Parcel Number: 4350-009-012
✗ *The Under Signed Declares*
DOCUMENTARY TRANSFER TAX $  NONE

_XX_ GRANTEE _XX_ WAS ____ ~~WAS NOT~~ THE FORECLOSING BENEFICIARY:  CONSIDERATION $782,508.05
UNPAID DEBT:  782,508.05  NON-EXEMPT AMOUNT:  $ ____ -0-

_____ COMPUTED ON THE CONSIDERATION OR VALUE OF PROPERTY CONVEYED.

_____ COMPUTED ON THE CONSIDERATION OR VALUE LESS LIENS OR ENCUMBRANCES REMAINING AT TIME OF
      SALE

_____ UNINCORPORATED AREA ____XX____ CITY OF:  BEVERLY HILLS

---

## TRUSTEE'S DEED UPON SALE

CITIVEST FINANCIAL SERVICES, INC., A CORPORATION (HEREIN AFTER CALLED TRUSTEE),
HERBY GRANTS AND CONVEYS, BUT WITHOUT COVENANT OR WARRANTY OF ANY KIND,
EXPRESSED OR IMPLIED, REGARDING TITLE TO SAID PROPERTY OR ANY ENCUMBRANCES
THEREON TO

     ELKWOOD ASSOCIATES, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

(HEREIN CALLED GRANTEE), THE REAL PROPERTY IN THE CITY OF BEVERLY HILLS,
COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

Lot 5 and the Northerly 15 feet of Lot 4 of Tract No. 4201, in the city of Beverly Hills,
County of Los Angeles, State of California, as per map recorded in book 46, page 63 of
maps, in the office of the county recorder of said county.

A.P.N. 4350-009-012
AKA: 910 NORTH REXFORD DRIVE, BEVERLY HILLS, CA 90210

THE CONVEYANCE IS MADE PURSUANT TO THE AUTHORITY AND POWERS VESTED IN
SAID TRUSTEE, AS TRUSTEE, OR SUCCESSOR TRUSTEE, OR SUBSTITUTED TRUSTEE,
UNDER THAT CERTAIN DEED OF TRUST EXECUTED BY MASSOUD YASHOUAFAR, AS
TRUSTEE OF THE MASSOUD AND PARINAZ YASHOUAFAR 2003 TRUST, u/d/t JUNE 18, 2003
("TRUSTOR"), RECORDED 03-25-2009, AS DOCUMENT NO. 2009-0425659, OF OFFICIAL
RECORDS OF LOS ANGELES COUNTY, CALIFORNIA: AND PURSUANT TO THE NOTICE OF
DEFAULT RECORDED 1/27/2014, AS INSTRUMENT NO. 2014-0086791, IN BOOK,      PAGE
, OF OFFICIAL RECORDS OF SAID COUNTY.  TRUSTEE HAVING COMPLIED WITH ALL
APPLICABLE STATUTORY REQUIREMENTS OF THE STATE OF CALIFORNIA AND
PERFORMED ALL DUTIES REQUIRED BY SAID DEED OF TRUST, INCLUDING, AMONG
OTHER THINGS, AS APPLICABLE, THE MAILING OF COPIES OF NOTICES OR THE
PUBLICATION OF A COPY OF THE NOTICE OF DEFAULT OR THE PERSONAL DELIVERY OF
THE COPY OF THE NOTICE OF DEFAULT OR THE POSTING OF THE COPIES OF THE NOTICE
OF SALE OR THE PUBLICATION OF A COPY THEREOF.

CITIVEST 00062
003

AT THE TIME AND PLACE FIXED IN THE NOTICE OF TRUSTEE'S NOTICE OF SALE, SAID TRUSTEE DID SELL SAID PROPERTY ABOVE DESCRIBED AT PUBLIC AUCTION ON FEBRUARY 23, 2015 TO SAID GRANTEE, BEING THE HIGHEST BIDDER THEREFORE, FOR $782,508.05, CASH, LAWFUL MONEY OF THE UNITED STATES, IN SATISFACTION OF THE INDEBTEDNESS THEN SECURED BY SAID DEED OF TRUST.

† A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of the document .

DATED: FEBRUARY 25, 2015                    CITIVEST FINANCIAL SERVICES, INC.

                                           BY: *R. M. Sandoval*
                                               R. M. SANDOVAL, V. P.

STATE OF CALIFORNIA          }
COUNTY OF LOS ANGELES } S.S.

On FEBRUARY 25, 2015, before me, EDWARD M. MAZZARINO, (A Notary Public), personally appeared R.M. SANDOVAL, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

EDWARD M. MAZZARINO
COMM. # 2015231
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
COMM. EXPIRES MARCH 26, 2017

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _LOS ANGELES_

On _2-25-15_ before me, _EDWARD M, Mazzari_ Notary Public
(Insert Name of Notary Public and Title)

personally appeared _R. M SANDOVAL_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

EDWARD M. MAZZARINO
COMM. # 2015231
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
COMM. EXPIRES MARCH 26, 2017

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT I**

**(Rexford Lease)**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA



**CALIFORNIA ASSOCIATION OF REALTORS®**

## RESIDENTIAL LEASE OR
## MONTH-TO-MONTH RENTAL AGREEMENT
(C.A.R. Form LR, Revised 12/13)

Date: 3/7/2015 _____ Henry Schibung to Elkwood Associates, LLC ("Landlord") and
_____ Massoud Yashouafar _____ ("Tenant") agree as follows:

**1. PROPERTY:**
A. Landlord rents to Tenant and Tenant rents from Landlord, the real property and improvements described as: 910 N. Rexfod
Dr. Beverly Hills, CA 90210 ("Premises").
B. The Premises are for the sole use as a personal residence by the following named person(s) only: Massoud
Yashouafar, Parinaz Yashsuafar & their 4 children
C. The following personal property, maintained pursuant to paragraph 11, is included: None
_____ or ☐ (if checked) the personal property on the attached addendum.
D. The Premises may be subject to a local rent control ordinance No

**2. TERM:** The term begins on (date) 3/7/2015 ("Commencement Date"), (Check A or B):
☐A. Month-to-Month: and continues as a month-to-month tenancy. Tenant may terminate the tenancy by giving written notice at least 30 days
prior to the intended termination date. Landlord may terminate the tenancy by giving written notice as provided by law. Such notices may be
given on any date.
☒B. Lease: and shall terminate on (date) 3/1/2017 at 12:01 ☒AM/☐PM.
Tenant shall vacate the Premises upon termination of the Agreement, unless: (i) Landlord and Tenant have extended this Agreement in
writing or signed a new agreement; (ii) mandated by local rent control law; or (iii) Landlord accepts Rent from Tenant (other than past due
Rent), in which case a month-to-month tenancy shall be created which either party may terminate as specified in paragraph 2A. Rent shall
be at a rate agreed to by Landlord and Tenant, or as allowed by law. All other terms and conditions of this Agreement shall remain in full
force and effect.

**3. RENT:** "Rent" shall mean all monetary obligations of Tenant to Landlord under the terms of the Agreement, except security deposit.
A. Tenant agrees to pay $ 25,000 per month for the term of the Agreement.
B. Rent is payable in advance on the 1st (or ☐ _____) day of each calendar month, and is delinquent on the next day.
C. If Commencement Date falls on any day other than the day Rent is payable under paragraph 3B, and Tenant has paid one full month's Rent in
advance of Commencement Date, Rent for the second calendar month shall be prorated and Tenant shall pay 1/30th of the monthly rent per day
for each day remaining in prorated second month.
D. PAYMENT: Rent shall be paid by ☒personal check, ☐money order, ☒cashier's check, or ☐other _____, to
(name) Elkwood Associates, LLC (phone) _____ at
(address) Provided to Tenant (or
at any other location subsequently specified by Landlord in writing to Tenant) (and ☐ if checked, rent may be paid personally, between the hours
of 8:30AM and 5:30PM on the following days First of Month ). If any payment
is returned for non-sufficient funds ("NSF") or because tenant stops payment, then, after that: (i) Landlord may, in writing, require Tenant to pay
Rent in cash for three months and (ii) all future Rent shall be paid by ☐money order, or ☐cashier's check.

**4. SECURITY DEPOSIT:**
A. Tenant agrees to pay $ 0 as a security deposit. Security deposit will be ☐ transferred to and held by the
Owner of the Premises, or ☐ held in Owner's Broker's trust account.
B. All or any portion of the security deposit may be used, as reasonably necessary, to: (i) cure Tenant's default in payment of Rent (which includes
Late Charges, NSF fees or other sums due); (ii) repair damage, excluding ordinary wear and tear, caused by Tenant or by a guest or licensee of
Tenant; (iii) clean Premises, if necessary, upon termination of the tenancy; and (iv) replace, or return personal property or appurtenances,
SECURITY DEPOSIT SHALL NOT BE USED BY TENANT IN LIEU OF PAYMENT OF LAST MONTH'S RENT. If all or any portion of the
security deposit is used during the tenancy, Tenant agrees to reinstate the total security deposit within five days after written notice is delivered to
Tenant. Within 21 days after Tenant vacates the Premises, Landlord shall: (1) furnish Tenant an itemized statement indicating the amount of any
security deposit received and the basis for its disposition and supporting documentation as required by California Civil Code § 1950.5(g); and (2)
return any remaining portion of the security deposit to Tenant.
C. Security deposit will not be returned until all Tenants have vacated the Premises and all keys returned. Any security deposit returned
by check shall be made out to all Tenants named on this Agreement, or as subsequently modified.
D. No interest will be paid on security deposit unless required by local law.
E. If the security deposit is held by Owner, Tenant agrees not to hold Broker responsible for its return. If the security deposit is held in Owner's
Broker's trust account, and Broker's authority is terminated before expiration of this Agreement, and security deposit is released to someone
other than Tenant, then Broker shall notify Tenant, in writing, where and to whom security deposit has been released. Once Tenant has been
provided such notice, Tenant agrees not to hold Broker responsible for the security deposit.

**5. MOVE-IN COSTS RECEIVED/DUE:** Move-in funds made payable to _____
shall be paid by ☐ personal check, ☐ money order, or ☐ cashier's check.

| Category | Total Due | Payment Received | Balance Due | Date Due |
|---|---|---|---|---|
| Rent from | | | | |
| To _____ (date) | | | | |
| *Security Deposit | | | | |
| Other | | | | |
| Other | | | | |
| Total | | | | |

*The maximum amount Landlord may receive as security deposit, however designated, cannot exceed two months' Rent for unfurnished premises, or
three months' Rent for furnished premises.

Tenant's Initials ( _____ ) ( _____ )              Landlord's Initials ( _JW_ ) ( _____ )

© 2013, California Association of REALTORS®, Inc.         Reviewed by _____ Date _____

LR REVISED 12/13 (PAGE 1 OF 6)

RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 1 OF 6)

Premises: _____ Date: _____

**6. LATE CHARGE; RETURNED CHECKS:**

A. Tenant acknowledges either late payment of Rent or issuance of a returned check may cause Landlord to incur costs and expenses, the exact amounts of which are extremely difficult and impractical to determine. These costs may include, but are not limited to, processing, enforcement and accounting expenses, and late charges imposed on Landlord. If any installment of Rent due from Tenant is not received by Landlord within 5 (or [ ] ) calendar days after the date due, or if a check is returned, Tenant shall pay to Landlord, respectively, an additional sum of $ __200__ or _____ % of the Rent due as a Late Charge and $25.00 as a NSF fee for the first returned check and $35.00 as a NSF fee for each additional returned check, either or both of which shall be deemed additional Rent.

B. Landlord and Tenant agree that these charges represent a fair and reasonable estimate of the costs Landlord may incur by reason of Tenant's late or NSF payment. Any Late Charge or NSF fee due shall be paid with the current installment of Rent. Landlord's acceptance of any Late Charge or NSF fee shall not constitute a waiver as to any default of Tenant. Landlord's right to collect a Late Charge or NSF fee shall not be deemed an extension of the date Rent is due under paragraph 3 or prevent Landlord from exercising any other rights and remedies under this Agreement and as provided by law.

**7. PARKING: (Check A or B)**

[ ] A. Parking is permitted as follows: On site _____

The right to parking [X] is [ ] is not included in the Rent charged pursuant to paragraph 3. If not included in the Rent, the parking rental fee shall be an additional $ _____ per month. Parking space(s) are to be used for parking properly licensed and operable motor vehicles, except for trailers, boats, campers, buses or trucks (other than pick-up trucks), Tenant shall park in assigned space(s) only. Parking space(s) are to be kept clean. Vehicles leaking oil, gas or other motor vehicle fluids shall not be parked on the Premises. Mechanical work or storage of inoperable vehicles is not permitted in parking space(s) or elsewhere on the Premises.

OR [ ] B. Parking is not permitted on the Premises.

**8. STORAGE: (Check A or B)**

[ ] A. Storage is permitted as follows: On site _____
The right to separate storage space [ ] is, [ ] is not, included in the Rent charged pursuant to paragraph 3. If not included in the Rent, storage space fee shall be an additional $ _____ per month. Tenant shall store only personal property Tenant owns, and shall not store property claimed by another or in which another has any right, title or interest. Tenant shall not store any improperly packaged food or perishable goods, flammable materials, explosives, hazardous waste or other inherently dangerous material, or illegal substances.

OR [ ] B. Except for Tenant's personal property, contained entirely within the Premises, storage is not permitted on the Premises.

**9. UTILITIES:** Tenant agrees to pay for all utilities and services, and the following charges: electric, water, gas except sewer, tel., cable, etc , which shall be paid for by Landlord. If any utilities are not separately metered, Tenant shall pay Tenant's proportional share, as reasonably determined and directed by Landlord. If utilities are separately metered, Tenant shall place utilities in Tenant's name as of the Commencement Date. Landlord is only responsible for installing and maintaining one usable telephone jack and one telephone line to the Premises. Tenant shall pay any cost for conversion from existing utilities service provider.

**10. CONDITION OF PREMISES:** Tenant has examined Premises and, if any, all furniture, furnishings, appliances, landscaping and fixtures, including smoke detector(s).

(Check all that apply:)

[X] A. Tenant acknowledges these items are clean and in operable condition, with the following exceptions: None _____

[ ] B. Tenant's acknowledgement of the condition of these items is contained in an attached statement of condition (C.A.R. Form MIMO).

[ ] C. (i) Landlord will Deliver to Tenant a statement of condition (C.A.R. Form MIMO) [ ] within 3 days after execution of this Agreement; [ ] prior to the Commencement Date; [ ] within 3 days after the Commencement Date.
(ii) Tenant shall complete and return the MIMO to Landlord within 3 (or [ ] _____ ) days after Delivery. Tenant's failure to return the MIMO within that time shall conclusively be deemed Tenant's Acknowledgement of the condition as stated in the MIMO.

[X] D. Tenant will provide Landlord a list of items that are damaged or not in operable condition within 3 (or [ ] _____ ) days after Commencement Date, not as a contingency of this Agreement but rather as an acknowledgement of the condition of the Premises.

[ ] E. Other: _____

**11. MAINTENANCE:**

A. Tenant shall properly use, operate and safeguard Premises, including if applicable, any landscaping, furniture, furnishings and appliances, and all mechanical, electrical, gas and plumbing fixtures, and smoke alarms, and keep them and the Premises clean, sanitary and well ventilated. Tenant shall be responsible for checking and maintaining all carbon monoxide detectors and any additional phone lines beyond the one line and jack that Landlord shall provide and maintain. Tenant shall immediately notify Landlord, in writing, of any problem, malfunction or damage with any item on the property. Tenant shall be charged for all repairs or replacements caused by Tenant, pets, guests or licensees of Tenant, excluding ordinary wear and tear. Tenant shall be charged for all damage to Premises as a result of failure to report a problem in a timely manner. Tenant shall be charged for repair of drain blockages or stoppages, unless caused by defective plumbing parts or tree roots invading sewer lines.

B. [ ] Landlord [X] Tenant shall water the garden, landscaping, trees and shrubs, except: _____

C. [ ] Landlord [X] Tenant shall maintain the garden, landscaping, trees and shrubs, except: _____

D. [ ] Landlord [X] Tenant shall maintain All property _____

E. Tenant's failure to maintain any item for which Tenant is responsible shall give Landlord the right to hire someone to perform such maintenance and charge Tenant to cover the cost of such maintenance.

F. The following items of personal property are included in the Premises without warranty and Landlord will not maintain, repair or replace them: None _____

Tenant's Initials ( _____ ) ( _____ )          Landlord's Initials ( _____ ) ( _____ )

| Reviewed by _____ Date _____ |

RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 2 OF 6)

Premises: _____   Date: _____

12. **NEIGHBORHOOD CONDITIONS:** Tenant is advised to satisfy him or herself as to neighborhood or area conditions, including schools, proximity and adequacy of law enforcement, crime statistics, proximity of registered felons or offenders, fire protection, other governmental services, availability, adequacy and cost of any wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, cemeteries, facilities and condition of common areas, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Tenant.

13. **PETS:** Unless otherwise provided in California Civil Code § 54.2, no animal or pet shall be kept on or about the Premises without Landlord's prior written consent, except:

14. ☑ (If checked) **NO SMOKING:** No smoking of any substance is allowed on the Premises or common areas. If smoking does occur on the Premises or common areas, (i) Tenant is responsible for all damage caused by the smoking including, but not limited to stains, burns, odors and removal of debris; (ii) Tenant is in breach of this Agreement; (iii) Tenant, guests, and all others may be required to leave the Premises; and (iv) Tenant acknowledges that in order to remove odor caused by smoking, Landlord may need to replace carpet and drapes and paint the entire premises regardless of when these items were last cleaned, replaced, or repainted. Such actions and other necessary steps will impact the return of any security deposit. The Premises or common areas may be subject to a local non-smoking ordinance.

15. **RULES/REGULATIONS:**
   A. Tenant agrees to comply with all Landlord rules and regulations that are at any time posted on the Premises or delivered to Tenant. Tenant shall not, and shall ensure that guests and licensees of Tenant shall not, disturb, annoy, endanger or interfere with other tenants of the building or neighbors, or use the Premises for any unlawful purposes, including, but not limited to, using, manufacturing, selling, storing or transporting illicit drugs or other contraband, or violate any law or ordinance, or commit a waste or nuisance on or about the Premises.
   B. (If applicable, check one)
      ☐ 1. Landlord shall provide Tenant with a copy of the rules and regulations within _____ days or
   OR ☐ 2. Tenant has been provided with, and acknowledges receipt of, a copy of the rules and regulations.

16. ☐ (If checked) **CONDOMINIUM; PLANNED UNIT DEVELOPMENT:**
   A. The Premises are a unit in a condominium, planned unit development, common interest subdivision or other development governed by a homeowners' association ("HOA"). The name of the HOA is _____. Tenant agrees to comply with all HOA covenants, conditions and restrictions, bylaws, rules and regulations and decisions ("HOA Rules"). Landlord shall provide Tenant copies of HOA Rules, if any. Tenant shall reimburse Landlord for any fines or charges imposed by HOA or other authorities, due to any violation by Tenant, or the guests or licensees of Tenant.
   B. (Check one)
      ☐ 1. Landlord shall provide Tenant with a copy of the HOA Rules within _____ days
   OR ☐ 2. Tenant has been provided with, and acknowledges receipt of, a copy of the HOA Rules.

17. **ALTERATIONS; REPAIRS:** Unless otherwise specified by law or paragraph 29C, without Landlord's prior written consent, (i) Tenant shall not make any repairs, alterations or improvements in or about the Premises including: painting, wallpapering, adding or changing locks, installing antenna or satellite dish(es), placing signs, displays or exhibits, or using screws, fastening devices, large nails or adhesive materials; (ii) Landlord shall not be responsible for the costs of alterations or repairs made by Tenant; (iii) Tenant shall not deduct from Rent the costs of any repairs, alterations or improvements; and (iv) any deduction made by Tenant shall be considered unpaid Rent.

18. **KEYS; LOCKS:**
   A. Tenant acknowledges receipt of (or Tenant will receive ☐ prior to the Commencement Date, or ☐ _____):
      ☒ _____ key(s) to Premises, ☐ _____ remote control device(s) for garage door/gate opener(s),
      ☒ _____ key(s) to mailbox, ☐ _____
      ☐ _____ key(s) to common area(s),   ☐ _____
   B. Tenant acknowledges that locks to the Premises ☐ have, ☐ have not, been re-keyed.
   C. If Tenant re-keys existing locks or opening devices, Tenant shall immediately deliver copies of all keys to Landlord. Tenant shall pay all costs and charges related to loss of any keys or opening devices. Tenant may not remove locks, even if installed by Tenant.

19. **ENTRY:**
   A. Tenant shall make Premises available to Landlord or Landlord's representative for the purpose of entering to make necessary or agreed repairs, (including, but not limited to, installing, repairing, testing, and maintaining smoke detectors and carbon monoxide devices, and bracing, anchoring or strapping water heaters), decorations, alterations, or improvements, or to supply necessary or agreed services, or to show Premises to prospective or actual purchasers, tenants, mortgagees, lenders, appraisers, or contractors.
   B. Landlord and Tenant agree that 24-hour written notice shall be reasonable and sufficient notice, except as follows: (1) 48-hour written notice is required to conduct an inspection of the Premises prior to the Tenant moving out, unless the Tenant waives the right to such notice. (2) If Landlord has in writing informed Tenant that the Premises are for sale and that Tenant will be notified orally to show the premises (C.A.R. Form NSE), then, for the next 120 days following the delivery of the NSE, notice may be given orally to show the Premises to actual or prospective purchasers. (3) No written notice is required if Landlord and Tenant orally agree to an entry for agreed services or repairs if the date and time of entry are within one week of the oral agreement. (4) No notice is required: (i) to enter in case of an emergency; (ii) if the Tenant is present and consents at the time of entry; or (iii) if the Tenant has abandoned or surrendered the Premises. (5) ☐ (If checked) Tenant authorizes the use of a keysafe/lockbox to allow entry into the Premises and agrees to sign a keysafe/lockbox addendum (C.A.R. Form KLA).

20. **SIGNS:** Tenant authorizes Landlord to place FOR SALE/LEASE signs on the Premises.

21. **ASSIGNMENT; SUBLETTING:** Tenant shall not sublet all or any part of Premises, or assign or transfer this Agreement or any interest in it, without Landlord's prior written consent. Unless such consent is obtained, any assignment, transfer or subletting of Premises or this Agreement or tenancy, by voluntary act of Tenant, operation of law or otherwise, shall, at the option of Landlord, terminate this Agreement. Any proposed assignee, transferee or sublessee shall submit to Landlord an application and credit information for Landlord's approval and, if approved, sign a separate written agreement with Landlord and Tenant. Landlord's consent to any one assignment, transfer or sublease, shall not be construed as consent to any subsequent assignment, transfer or sublease and does not release Tenant of Tenant's obligations under this Agreement.

Tenant's Initials ( _____ ) ( _____ )        Landlord's Initials ( _____ ) ( _____ )

| Reviewed by _____ | Date _____ |

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 3 OF 6)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026

Premises: _____          Date: _____

22. **JOINT AND INDIVIDUAL OBLIGATIONS:** If there is more than one Tenant, each one shall be individually and completely responsible for the performance of all obligations of Tenant under this Agreement, jointly with every other Tenant, and individually, whether or not in possession.

23. ☐ **LEAD-BASED PAINT (if checked):** Premises were constructed prior to 1978. In accordance with federal law, Landlord gives and Tenant acknowledges receipt of the disclosures on the attached form (C.A.R. Form FLD) and a federally approved lead pamphlet.

24. ☐ **MILITARY ORDNANCE DISCLOSURE:** (If applicable and known to Landlord) Premises are located within one mile of an area once used for military training, and may contain potentially explosive munitions.

25. ☐ **PERIODIC PEST CONTROL:** Landlord has entered into a contract for periodic pest control treatment of the Premises and shall give Tenant a copy of the notice originally given to Landlord by the pest control company.

26. ☐ **METHAMPHETAMINE CONTAMINATION:** Prior to signing this Agreement, Landlord has given Tenant a notice that a health official has issued an order prohibiting occupancy of the property because of methamphetamine contamination. A copy of the notice and order are attached.

27. **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Landlord nor Brokers, if any, are required to check this website. If Tenant wants further information, Tenant should obtain information directly from this website.)

28. **POSSESSION:**
   A. Tenant is not in possession of the Premises. If Landlord is unable to deliver possession of Premises on Commencement Date, such Date shall be extended to the date on which possession is made available to Tenant. If Landlord is unable to deliver possession within 5 (or ☐ _____ ) calendar days after agreed Commencement Date, Tenant may terminate this Agreement by giving written notice to Landlord, and shall be refunded all Rent and security deposit paid. Possession is deemed terminated when Tenant has returned all keys to the Premises to Landlord.
   B. ☐ Tenant is already in possession of the Premises.

29. **TENANT'S OBLIGATIONS UPON VACATING PREMISES:**
   A. Upon termination of this Agreement, Tenant shall: (i) give Landlord all copies of all keys or opening devices to Premises, including any common areas; (ii) vacate and surrender Premises to Landlord, empty of all persons; (iii) vacate any/all parking and/or storage space; (iv) clean and deliver Premises, as specified in paragraph C below, to Landlord in the same condition as referenced in paragraph 10; (v) remove all debris; (vi) give written notice to Landlord of Tenant's forwarding address; and (vii)

   B. All alterations/improvements made by or caused to be made by Tenant, with or without Landlord's consent, become the property of Landlord upon termination. Landlord may charge Tenant for restoration of the Premises to the condition it was in prior to any alterations/improvements.

   C. Right to Pre-Move-Out Inspection and Repairs: (i) After giving or receiving notice of termination of a tenancy (C.A.R. Form NTT), or before the end of a lease, Tenant has the right to request that an inspection of the Premises take place prior to termination of the lease or rental (C.A.R. Form NRI). If Tenant requests such an inspection, Tenant shall be given an opportunity to remedy identified deficiencies prior to termination, consistent with the terms of this Agreement. (ii) Any repairs or alterations made to the Premises as a result of this inspection (collectively, "Repairs") shall be made at Tenant's expense. Repairs may be performed by Tenant or through others, who have adequate insurance and licenses and are approved by Landlord. The work shall comply with applicable law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. (iii) Tenant shall: (a) obtain receipts for Repairs performed by others; (b) prepare a written statement indicating the Repairs performed by Tenant and the date of such Repairs; and (c) provide copies of receipts and statements to Landlord prior to termination. Paragraph 29C does not apply when the tenancy is terminated pursuant to California Code of Civil Procedure § 1161(2), (3) or (4).

30. **BREACH OF CONTRACT; EARLY TERMINATION:** In addition to any obligations established by paragraph 29, in the event of termination by Tenant prior to completion of the original term of the Agreement, Tenant shall also be responsible for lost Rent, rental commissions, advertising expenses and painting costs necessary to ready Premises for re-rental. Landlord may withhold any such amounts from Tenant's security deposit.

31. **TEMPORARY RELOCATION:** Subject to local law, Tenant agrees, upon demand of Landlord, to temporarily vacate Premises for a reasonable period, to allow for fumigation (or other methods) to control wood destroying pests or organisms, or other repairs to Premises. Tenant agrees to comply with all instructions and requirements necessary to prepare Premises to accommodate pest control, fumigation or other work, including bagging or storage of food and medicine, and removal of perishables and valuables. Tenant shall only be entitled to a credit of Rent equal to the per diem Rent for the period of time Tenant is required to vacate Premises.

32. **DAMAGE TO PREMISES:** If, by no fault of Tenant, Premises are totally or partially damaged or destroyed by fire, earthquake, accident or other casualty that render Premises totally or partially uninhabitable, either Landlord or Tenant may terminate this Agreement by giving the other written notice. Rent shall be abated as of the date Premises become totally or partially uninhabitable. The abated amount shall be the current monthly Rent prorated on a 30-day period. If the Agreement is not terminated, Landlord shall promptly repair the damage, and Rent shall be reduced based on the extent to which the damage interferes with Tenant's reasonable use of Premises. If damage occurs as a result of an act of Tenant or Tenant's guests, only Landlord shall have the right of termination, and no reduction in Rent shall be made.

33. **INSURANCE:** Tenant's or guest's personal property and vehicles are not insured by Landlord, manager or, if applicable, HOA, against loss or damage due to fire, theft, vandalism, rain, water, criminal or negligent acts of others, or any other cause. Tenant is advised to carry Tenant's own insurance (renter's insurance) to protect Tenant from any such loss or damage. Tenant shall comply with any requirement imposed on Tenant by Landlord's insurer to avoid: (i) an increase in Landlord's insurance premium
33b (or Tenant shall pay for the increase in premium); or (ii) loss of insurance.

34. **WATERBEDS:** Tenant shall not use or have waterbeds on the Premises unless: (i) Tenant obtains a valid waterbed insurance policy; (ii) Tenant increases the security deposit in an amount equal to one-half of one month's Rent; and (iii) the bed conforms to the floor load capacity of Premises.

35. **WAIVER:** The waiver of any breach shall not be construed as a continuing waiver of the same or any subsequent breach.

Tenant's Initials ( _____ ) ( _____ )          Landlord's Initials ( _____ ) ( _____ )

Reviewed by _____ Date _____

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          Gramercy pl

33b  Landlord will obtain insurance for

Premises: 910 N. Rexford Dr. B.H. CA 90210 — Date: 3/7/15

**36** NOTICE: Notices may be served at the following address, or at any other location subsequently designated:
Landlord: Elkwood Associates LLC
1 capital Associates # 660
Sacramento, CA 95814
Tenant: Massoud Yashouafar
910 N. Rexford Dr
B.H. CA 90210
**36b.**

**37. TENANT ESTOPPEL CERTIFICATE:** Tenant shall execute and return a tenant estoppel certificate delivered to Tenant by Landlord or Landlord's agent within 3 days after its receipt. Failure to comply with this requirement shall be deemed Tenant's acknowledgment that the tenant estoppel certificate is true and correct, and may be relied upon by a lender or purchaser.

**38. REPRESENTATION:**
A. **TENANT REPRESENTATION; OBLIGATIONS REGARDING OCCUPANTS; CREDIT:** Tenant warrants that all statements in Tenant's rental application are accurate. Landlord requires all occupants 18 years of age or older and all emancipated minors to complete a lease rental application. Tenant acknowledges this requirement and agrees to notify Landlord when any occupant of the Premises reaches the age of 18 or becomes an emancipated minor. Tenant authorizes Landlord and Broker(s) to obtain Tenant's credit report periodically during the tenancy in connection with the modification or enforcement of this Agreement. Landlord may cancel this Agreement: (i) before occupancy begins; (ii) upon disapproval of the credit report(s); or (iii) at any time, upon discovering that information in Tenant's application is false. A negative credit report reflecting on Tenant's record may be submitted to a credit reporting agency if Tenant fails to fulfill the terms of payment and other obligations under this Agreement.
B. **LANDLORD REPRESENTATIONS:** Landlord warrants, that unless otherwise specified in writing, Landlord is unaware of (i) any recorded Notices of Default affecting the Premise; (ii) any delinquent amounts due under any loan secured by the Premises; and (iii) any bankruptcy proceeding affecting the Premises.

**39. MEDIATION:**
A. Consistent with paragraphs B and C below, Landlord and Tenant agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action.
B. The following matters are excluded from mediation: (i) an unlawful detainer action; (ii) the filing or enforcement of a mechanic's lien; and (iii) any matter within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation provision.
C. Landlord and Tenant agree to mediate disputes or claims involving Listing Agent, Leasing Agent or property manager ("Broker"), provided Broker shall have agreed to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to such Broker. Any election by Broker to participate in mediation shall not result in Broker being deemed a party to this Agreement.

**40. ATTORNEY FEES:** In any action or proceeding arising out of this Agreement, the prevailing party between Landlord and Tenant shall be entitled to reasonable attorney fees and costs, except as provided in paragraph 39A.

**41.** C.A.R. FORM: C.A.R. Form means the specific form referenced or another comparable form agreed to by the parties.

**42.** OTHER TERMS AND CONDITIONS; SUPPLEMENTS: ☐ Interpreter/Translator Agreement (C.A.R. Form ITA); ☐ Keysafe/Lockbox Addendum (C.A.R. Form KLA); ☐ Lead-Based Paint and Lead-Based Paint Hazards Disclosure (C.A.R. Form FLD); ☐ Landlord in Default Addendum (C.A.R. Form LID)

The following ATTACHED supplements are incorporated in this Agreement: _____

**43. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Neither this Agreement nor any provision in it, may be extended, amended, modified, altered or changed except in writing. This Agreement is subject to California landlord-tenant law and shall incorporate all changes required by amendment or successors to such law. This Agreement and any supplement, addendum or modification, including any copy, may be signed in two or more counterparts, all of which shall constitute one and the same writing.

**44. AGENCY:**
A. **CONFIRMATION:** The following agency relationship(s) are hereby confirmed for this transaction:
Listing Agent: (Print firm name) None --J.R.M Properties--
is the agent of (check one): ☐ the Landlord exclusively; or ☐ both the Landlord and Tenant.
Leasing Agent: (Print firm name) None --J.R.M Properties--
(if not same as Listing Agent) is the agent of (check one): ☐ the Tenant exclusively; or ☐ the Landlord exclusively; or ☐ both the Tenant and Landlord.
B. **DISCLOSURE:** ☐ (if checked): The term of this lease exceeds one year. A disclosure regarding real estate agency relationships (C.A.R. Form AD) has been provided to Landlord and Tenant, who each acknowledge its receipt.

**45.** ☐ TENANT COMPENSATION TO BROKER: Upon execution of this Agreement, Tenant agrees to pay compensation to Broker as specified in a separate written agreement between Tenant and Broker.

**36b.** Check & Correspondence should be mail to:
Reliable Properties
6399 Wilshire Blvd. Suite 604
Los Angeles, CA 90048

Tenant's Initials ( ____ )( ____ )     Landlord's Initials ( ____ )( ____ )

Reviewed by ____ Date ____

LR REVISED 12/13 (PAGE 5 OF 6)

Premises: _____ Date: _____

46. ☐ INTERPRETER/TRANSLATOR: The terms of this Agreement have been interpreted for Tenant into the following language: _____, Landlord and Tenant acknowledge receipt of the attached interpreter/translator agreement (C.A.R. Form ITA).

47. FOREIGN LANGUAGE NEGOTIATION: If this Agreement has been negotiated by Landlord and Tenant primarily in Spanish, Chinese, Tagalog, Korean or Vietnamese, pursuant to the California Civil Code, Tenant shall be provided a translation of this Agreement in the language used for the negotiation.

48. OWNER COMPENSATION TO BROKER: Upon execution of this Agreement, Owner agrees to pay compensation to Broker as specified in a separate written agreement between Owner and Broker (C.A.R. Form LCA).

49. RECEIPT: If specified in paragraph 5, Landlord or Broker, acknowledges receipt of move-in funds.

> Landlord and Tenant acknowledge and agree Brokers: (a) do not guarantee the condition of the Premises; (b) cannot verify representations made by others; (c) cannot provide legal or tax advice; (d) will not provide other advice or information that exceeds the knowledge, education or experience required to obtain a real estate license. Furthermore, if Brokers are not also acting as Landlord in this Agreement, Brokers: (e) do not decide what rental rate a Tenant should pay or Landlord should accept; and (f) do not decide upon the length or other terms of tenancy. Landlord and Tenant agree that they will seek legal, tax, insurance and other desired assistance from appropriate professionals.

Tenant agrees to rent the Premises on the above terms and conditions.

Tenant _____ Date 3/7/15
Address _____ City _____ State ____ Zip _____
Telephone _____ Fax _____ E-mail _____

Tenant _____ Date _____
Address _____ City _____ State ____ Zip _____
Telephone _____ Fax _____ E-mail _____

☐ GUARANTEE: In consideration of the execution of this Agreement by and between Landlord and Tenant and for valuable consideration, receipt of which is hereby acknowledged, the undersigned ("Guarantor") does hereby: (i) guarantee unconditionally to Landlord and Landlord's agents, successors and assigns, the prompt payment of Rent or other sums that become due pursuant to this Agreement, including any and all court costs and attorney fees included in enforcing the Agreement; (ii) consent to any changes, modifications or alterations of any term in this Agreement agreed to by Landlord and Tenant; and (iii) waive any right to require Landlord and/or Landlord's agents to proceed against Tenant for any default occurring under this Agreement before seeking to enforce this Guarantee.

Guarantor (Print Name) _____
Guarantor _____ Date _____
Address _____ City _____ State ____ Zip _____
Telephone _____ Fax _____ E-mail _____

Landlord agrees to rent the Premises on the above terms and conditions.

Landlord _____ Date 3/7/15 Landlord _____ Date _____
Address 6399 WILSHIRE BL #604 LA CA 90048
Telephone _____ Fax _____ E-mail _____

REAL ESTATE BROKERS:
A. Real estate brokers who are not also Landlord under this Agreement are not parties to the Agreement between Landlord and Tenant.
B. Agency relationships are confirmed in paragraph 44.
C. COOPERATING BROKER COMPENSATION: Listing Broker agrees to pay Cooperating Broker (Leasing Firm) and Cooperating Broker agrees to accept: (i) the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS; or (ii) ☐ (if checked) the amount specified in a separate written agreement between Listing Broker and Cooperating Broker.

Real Estate Broker (Listing Firm) J.R.M Properties ____ BRE Lic. # 01830011
By (Agent) _____ BRE Lic. # _____ Date _____
Address _____ City _____ State ____ Zip _____
Telephone _____ Fax _____ E-mail _____

Real Estate Broker (Leasing Firm) J.R.M Properties ____ BRE Lic. # _____
By (Agent) _____ BRE Lic. # 01830011 Date _____
Address _____ City _____ State ____ Zip _____
Telephone _____ Fax _____ E-mail _____

© 2013, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

LR REVISED 12/13 (LR PAGE 6 OF 6)

RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 6 OF 6)

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California  90067**

A true and correct copy of the following documents entitled (*specify*): *SECOND AMENDED COMPLAINT TO (I) QUIET TITLE OF THE REXFORD HOME, (II) SET ASIDE FORECLOSURE SALE OF THE REXFORD HOME, (III) AVOID ACTUAL AND CONSTRUCTIVE FRAUDULENT TRANSFER OF REXFORD HOME AND ACTUAL FRAUDULENT TRANSFER OF CHALETTE HOME, (IV) RECOVER THE PROPERTIES OR VALUE THEREOF, AND (V) RELATED RELIEF* will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **October 18, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (*date*) **October 18, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):**  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **October 18, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY**
The Honorable Geraldine Mund
United States Bankruptcy Court
21041 Burbank Blvd., Suite 312, Courtroom 303,
Woodland Hills, CA 91367

Daniel J. McCarthy
Email:  dmccarthy@hfbllp.com

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 18, 2017 | MYRA KULICK | /s/ Myra Kulick |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                   **F 9013-3.1.PROOF.SERVICE**

DOCS_LA:309722.1 32274/001

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- *Henry S David      hdavid@davidfirm.com, 8163836420@filings.docketbird.com*
- *John W Lucas      jlucas@pszjlaw.com, ocarpio@pszjlaw.com*
- *Daniel J McCarthy      dmccarthy@hillfarrer.com, spadilla@hillfarrer.com;docket@hillfarrer.com*
- *Ashley M McDow      amcdow@bakerlaw.com,*
  *mdelaney@bakerlaw.com;sgaeta@bakerlaw.com;rojeda@bakerlaw.com;ffarivar@bakerlaw.com;nbrazil@bakerlaw.com*
- *Jeremy V Richards      jrichards@pszjlaw.com, bdassa@pszjlaw.com;imorris@pszjlaw.com*
- *Ronald N Richards      ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com*
- *United States Trustee (SV)      ustpregion16.wh.ecf@usdoj.gov*


**2. SERVED BY UNITED STATES MAIL:**

Quality Loan Service Corporation
Attn:  Officer or Director
2141 5th Avenue
San Diego, CA 92101

Registered Agent
Quality Loan Service Corporation
Bounlet Louvan
411 Ivy Street
San Diego, CA 92101

Israel Abselet
114 Pine Street
Port Jefferson Station, NY 11776

Howard Abselet
114 Pine Street
Port Jefferson Station, NY 11776

Attorneys for Israel Abselet and Howard Abselet
Henry S. David
The David Firm
617 W. 7th St., Suite 702
Los Angeles, CA 90017

Soda Partners, LLC
Attn:  Officer, Director or Member
19101 Rose Ct.
Monte Sereno, CA 95030

Attorneys for Soda Partners, LLC
Ronald Richards, Esq.
P.O. Box 11480
Beverly Hills, CA 90213

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**

DOCS_LA:309722.1 32274/001

2

<u>Registered Agent for Soda Partners, LLC</u>
Sam G. Hawkes
19101 Rose Ct.
Monte Sereno, CA 95030

Fieldbrook, Inc.
Attn:  Officer or Director
16633 Ventura Blvd., 6th Floor
Encino, CA 91436

Elkwood Associates, LLC
Attn:  Officer, Director or Member
One Capital Mall, Ste. 660
Sacramento, CA 95814

<u>Attorneys for Elkwood Associates, LLC and Fieldbrook, Inc.</u>
Daniel J. McCarthy, Esq.
Hill Farrer & Burrill LLP
300 South Grand Avenue, 37th Floor
Los Angeles, CA 90071-3147

Citivest Financial Services, Inc.
Attention Edward M. Mazzarino or Director or Officer
10008 Government Point Way, #103
Las Vegas, NV 89183

<u>Registered Agent for Citivest Financial Services, Inc.</u>
Helen Damasius
2662 Sunday Grace Drive
Henderson, NV 89052

Chase Manhattan Mortgage Company
780 Kansas Lane, Suite A
Monroe, LA 71203
Attn:  Legal Support Services

<u>Registered Agent for Chase Manhattan Mortgage Company</u>
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**

DOCS_LA:309722.1 32274/001                                                          3